[Civ. No. 48798. Second Dist., Div. Five. Feb. 24, 1978.]

KENNETH E. KIRKPATRICK, Plaintiff and Respondent, v. CIVIL SERVICE COMMISSION FOR THE COUNTY OF LOS ANGELES, Defendant and Appellant.

**COUNSEL**

John H. Larson, County Counsel, and Leslie C. Randall, Deputy County Counsel, for Defendant and Appellant.

Darling, Hall, Rae & Gute, Macdonald, Halsted & Laybourne and John R. Shiner for Plaintiff and Respondent.

OPINION

ASHBY, J.—Respondent Kenneth Kirkpatrick was chief probation officer, a position then in the classified civil service of Los Angeles County, from June 6, 1968, until November 19, 1974, when he was discharged by the Los Angeles County Board of Supervisors.[1] He demanded a hearing before the Los Angeles County Civil Service Commission, appellant herein, which hearing was held in March 1975. By final decision dated July 23, 1975, the commission sustained respondent's discharge. Respondent petitioned the superior court for a writ of mandamus. The superior court granted the writ and ordered the commission to reverse its order sustaining the discharge, and to reinstate respondent in his position. The commission appeals.

The letter from the board of supervisors discharging respondent cited 14 specific failures of respondent to manage his department effectively. The commission, after lengthy hearings between March 3, and March 28, 1975, found the 14 charges true, and concluded that respondent was not capable of managing the department.[2]

---

[1]According to the county's advertisement for the vacancy created by the discharge, in 1975 the probation department had a budget of approximately $60 million, 4,500 employees, and the responsibility for supervising 18,000 juveniles and 60,000 adults. As head of the department, the probation officer is directly responsible for the administration of all the department's functions.

[2]The commission found specifically that: "a. [Respondent] failed upon learning of increased juvenile homicides in the County of Los Angeles to evaluate and take effective corrective action to try to resolve the problem of high recidivist juvenile crime.

"b. [Respondent] failed to plan, organize and control his department with sufficient skill to provide basic probationary services necessary for the protection of the community which was shown by failure of Deputy Probation Officers and clerical staff under his supervision and control to perform basic tasks, such as registration of cases with the State of California Criminal Identification Index, case planning and informing probationers of court orders, as indicated by a four office management audit conducted between February 19, 1974 and April 23, 1974 and by 1974 Department-wide audits.

"c. [Respondent] failed to administer effectively the collection of fines and restitutions, as directed by court order.

"d. [Respondent] failed to provide adequate identification, care, treatment and housing for violent, emotionally disturbed juveniles prior to 1974.

"e. [Respondent] failed to operate an efficient subpoena system, which has resulted in a number of juvenile cases being dismissed because of nonappearance of witnesses and which has cost law enforcement agencies losses in man-hours and overtime payments.

"f. [Respondent] failed to test adequately probationers pursuant to court narcotic testing orders and to promulgate speedily adequate standards for such testing.

"g. [Respondent] failed to control his department, in that he permitted the expenditure of over $150,000 in an unauthorized manner, without contract, to fund a program entitled Extension Zero.

"h. [Respondent] failed to maintain Central Juvenile Hall, MacLaren Hall and Los Padrinos Juvenile Hall at an acceptable level of sanitation prior to 1974 inspection by

In his petition for writ of mandate, respondent attacked his discharge and the commission's findings on both procedural and substantive grounds. The superior court did not act upon respondent's contention that the commission's findings were not supported by substantial evidence. The court declined to review the many volumes of evidence taken before the commission, and ruled instead that the discharge was invalid because the board of supervisors failed to take certain procedural steps *prior* to discharging respondent.

The trial court held that the proceedings before the commission were invalid and that respondent was required to be reinstated in his position because (1) respondent was not given, prior to dismissal, notice of the charges and an opportunity to respond as required by *Skelly* v. *State Personnel Bd.*, 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774]; (2) neither the commission nor the board ever established "standards of efficiency" for the position of chief probation officer; and (3) the appointing power (board of supervisors) had failed to give respondent performance evaluation ratings annually as required by rule 21 of the commission. The court further held that in the absence of such performance standards, the court was incapable of reviewing the merits of the charges found true by the commission. In its order the court further provided that respondent must be reinstated in his position, and that the board and commission could not proceed to consider anew any of the charges unless the conduct in question fell "below whatever minimum standards, established by competent evidence, might be required for the position of the Chief Probation Officer. Examples of conduct which might fall below

---

Los Angeles County Supervisors, the Los Angeles County Department of Health Services and the California Youth Authority.

"i. [Respondent] failed to demand or take prompt disciplinary action where employees failed to meet acceptable standards of behavior or work performance.

"j. [Respondent] failed to implement an effective, systematic training program for Probation Department personnel. This failure led to poor performance by Deputy Probation Officers and criticism from the Courts.

"k. [Respondent] failed to use state aid (subsidy) in an effective and appropriate manner. Specifically, [Respondent] did not develope [*sic*] effective innovative programs and his department is rated low by Youth Authority Staff as to use of subsidy funds.

"l. [Respondent] failed to perform as a manager in that, among other deficiencies, he failed to set measurable standards, or require reports on achievement or take corrective measures to achieve those standards.

"m. [Respondent] failed to establish lines of communication with police agencies which has led to low morale within the department and criticism of the department from outside agencies. Specifically, he failed to ensure that police agencies were kept informed in a timely manner of Probation Department actions and the reason behind those actions.

"n. [Respondent] consistently failed to inform the Board of Supervisors or any member thereof of significant problems and needs of the Probation Department."

such minimum standards would be criminal activity or absence without leave for an extended period of time." We hold that the trial court erred and therefore we reverse the judgment.

### *Skelly* Rights

■ In *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, the Supreme Court, while acknowledging that a permanent civil service employee has a statutory right to an evidentiary hearing *after* his dismissal to challenge the action taken against him, held that due process of law also requires that such an employee have certain rights *prior* to the effective date of the dismissal. The court held that, "As a minimum, these preremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id.,* at p. 215.)

Respondent's discharge in this case occurred prior to the *Skelly* decision, and the trial court found that respondent was not accorded his *Skelly* rights prior to discharge. In *Barber* v. *State Personnel Bd.,* 18 Cal.3d 395, 402 [134 Cal.Rptr. 206, 556 P.2d 306], the Supreme Court held that *Skelly* is applicable "to all pending cases where the dismissals are not yet final," and applied *Skelly* where the personnel board's decision, and the trial court's denial of a petition for writ of mandate, had occurred prior to the *Skelly* decision. (*Id.,* at pp. 399, 405.)

Thus in the instant case the trial court correctly concluded that *Skelly* was applicable to respondent, but the court incorrectly analyzed the effect of the *Skelly* violation.[3] The minimal due process rights required by *Skelly prior* to discharge are merely anticipatory of the full rights which *are* accorded to the employee *after* discharge. The employee can exercise those rights at the subsequent hearing, and if that hearing shows that there were good grounds for dismissal, the employee is not entitled to reinstatement; he is merely entitled to damages for the limited time period in which discipline was wrongfully imposed, i.e., the employee is entitled to back pay for the period from the time discipline was actually imposed to the date the commission filed its decision validating the dismissal. (*Barber* v. *State Personnel Bd., supra,* 18 Cal.3d at pp. 401-403;

---

[3]At the time of the trial court's judgment in this case, *Barber* v. *State Personnel Bd., supra,* 18 Cal.3d 395, had not yet been decided. However, *Kristal* v. *State Personnel Bd.,* 50 Cal.App.3d 230 [123 Cal.Rptr. 512], and *Keely* v. *State Personnel Bd.,* 53 Cal.App.3d 88 [125 Cal.Rptr. 398], had been decided and were cited to the court.

*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at p. 220, fn. 34; *Kristal* v. *State Personnel Bd., supra,* 50 Cal.App.3d at p. 241; *Keely* v. *State Personnel Bd., supra,* 53 Cal.App.3d at p. 98.)

Thus the *Skelly* violation does not support the trial court's order in this case reinstating respondent in his position. Respondent was only entitled to damages, measured by back pay for the period between his dismissal on November 19, 1974, and the decision of the commission upholding his dismissal, filed July 23, 1975.[4]

## Civil Service Regulations

 The trial court also based its order reinstating respondent on the ground that during respondent's tenure as chief probation officer the commission had failed to establish specific standards by which to evaluate respondent's efficiency, and the appointing power (board of supervisors) had failed to provide respondent with a yearly performance evaluation rating.

Article IX, section 34 of the Los Angeles County Charter provides that the commission shall prescribe, amend and enforce rules for the classified service which shall have the force and effect of law. That section further states:

"The rules shall provide:

". . . . . . . . . . . . . . . . . . .

"(15) For the fixing of standards of efficiency and for procedures for the evaluation of the performance of employees in relation to such standards . . . ."

Pursuant to this authority, the commission has adopted rule 21 relating to performance evaluation.

---

[4]The commission argues that the back pay should terminate as of March 28, 1975, when the hearings before the commission concluded, rather than July 23, 1975, when the commission filed its final decision. This argument is not consistent with the express language of the Supreme Court in *Barber* that "the constitutional vice [the failure to accord the employee preremoval safeguards] existed until *the time the board rendered its decision. . . .* The proper period for measuring the amount of back pay due therefore begins at the time discipline is actually imposed and ends *on the date the board files its decision.*" (*Barber* v. *State Personnel Bd., supra,* 18 Cal.3d at p. 403; italics added.)

Rule 21.01 provides in part: "The performance of each employee in the classified service shall be evaluated by the appointing power in relation to standards for efficient performance of the work in accordance with these Rules and procedures authorized by the Commission."

Rule 21.02 provides in part: "Ratings of efficiency of performance shall be made for permanent employees at least once each year . . . ."

Rule 21.04 authorizes and defines four possible ratings, outstanding, competent, improvement needed, and unsatisfactory.

The trial court found that neither the board nor the commission has ever established performance standards or evaluation criteria for the county's 58 department heads, including chief probation officer.

The court also found that it was previously the policy of the board to treat department heads differently from other county employees in the classified service and not to provide annual performance evaluations to department heads as required by rule 21. The only time respondent was specifically evaluated under rule 21 was at the conclusion of his probationary status, at which time he was rated competent.

It was argued in the trial court that the board was authorized to treat department heads differently and to decline to apply rule 21 to them. It was argued that since adoption of the "executive salary" ordinance in 1971 department heads received a form of annual evaluation when the board decided whether or not to raise their salaries.[5] However, the court found that the executive salary ordinance was no substitute for rule 21. The trial court found that the ordinance was used solely for determining the level of compensation, and did not in effect constitute an evaluation since the decisions were made in executive session and not necessarily communicated to the department head.

The trial court could find no exception in the rules which authorized treating department heads differently from all other classified employees for purposes of rule 21. The trial court held it was unfair and discriminatory not to apply rule 21 to department heads and that this

[5]Respondent's salary was not raised in 1973 or 1974 and it was argued that this was in effect an evaluation that his performance was inadequate.

failure to comply with rule 21 rendered respondent's discharge invalid and authorized his reinstatement.[6]

We conclude that the trial court erred in ruling that the failure of the board to apply rule 21 to department heads in the past necessarily invalidates the commission's decision upholding respondent's discharge. An error in the procedures used prior to discharge does not require that the proceedings conducted after discharge be invalidated if the employee had full opportunity to contest the charges at the subsequent hearing and the evidence produced at the hearing supported the discharge. (*Barber* v. *State Personnel Bd., supra,* 18 Cal.3d at pp. 401-402; *Kristal* v. *State Personnel Bd., supra,* 50 Cal.App.3d at p. 241; *Cook* v. *Civil Service Commission,* 178 Cal.App.2d 118, 125-126 [2 Cal.Rptr. 836]; *Kidd* v. *State Civil Service Com.,* 13 Cal.App.2d 653, 655-656 [57 P.2d 569].)

At oral argument in this court respondent conceded that there was nothing in the rules of the commission which specifically provided that the prior receipt of a performance evaluation rating of "improvement needed" or "unsatisfactory" was a prerequisite to discharge. In this respect the rules may be contrasted with a provision of the Education Code, section 44938,[7] which has long provided specifically that "[t]he governing board of any school district shall not act upon any charges of unprofessional conduct or incompetency unless" the employee within a certain time period had previously been given written notice of the conduct and an opportunity to correct such faults. (*Fresno City H. S. Dist.* v. *De Caristo,* 33 Cal.App.2d 666, 674-675 [92 P.2d 668].) Had the commission intended to adopt such a rule, it could have used language similar to that in the Education Code. (*Anaclerio* v. *Skinner,* 64 Cal.App.3d 194, 197 [134 Cal.Rptr. 303]; see also *State* ex rel. *Messner* v. *Milwaukee Cty. Civ. S. Com'n.* (1972) 56 Wis.2d 438 [202 N.W.2d 13, 18-19].)

The fact that respondent did not receive a form with a rating of "improvement needed" or "unsatisfactory" would not necessarily mean that he had no notice of problems in his management of the department which required correction. The commission alleges that the evidence

---

[6]At the time of respondent's discharge, heads of departments like respondent were classified employees. Subsequent to these proceedings, the voters at the primary election of June 8, 1976, approved a charter amendment removing all heads of county agencies and departments from the classified service.

[7]Former Education Code section 13407, which traces its history in turn to section 5.652 of the School Code, enacted in 1931. (Stats. 1931, ch. 657, § 5, p. 1396.)

produced at the hearing before the commission showed that respondent did have notice of many of these problems and notice that they were regarded as serious by the appointing power.

Furthermore, a number of the charges involve problems which respondent in his capacity as head of the department should have known required correction, whether or not he was specifically advised by the board of supervisors to correct them. Such problems as the alleged failures to operate an efficient subpoena system resulting in cases being dismissed; failure to register cases with the state criminal identification index; failure to administer effectively the collection of fines and restitutions; and failure to maintain juvenile institutions at an acceptable level of sanitation would by their very nature have suggested to an effective manager that they required correction, on his own initiative. Lack of knowledge of such problems is in itself evidence of incompetency. An effective department manager would bring the existence of problems such as the above to the attention of the board and request the means to solve them, rather than expecting the board to inform him of the problems. In fact, one of the charges against respondent was that he "consistently failed to inform the Board of Supervisors or any member thereof of significant problems and needs of the Probation Department."

The trial court also held that because neither the commission nor the board had ever established specific performance criteria for the position of chief probation officer, it was impossible for the commission or the court to determine whether respondent's discharge was proper. We hold the trial court also erred in reaching this conclusion. The charges against respondent alleged that he was an inefficient manager of the department. The charges were based both upon specific failures of the department to fulfill its function, for which respondent was held responsible as the department head,[8] and on certain management techniques used by respondent himself which were alleged to be inefficient.[9]

[8]Examples would include failures to register cases with the criminal identification index, failures to administer effectively the collection of fines and restitutions, failure to operate an efficient subpoena system, failure to test adequately probationers subject to narcotic testing orders, and failure to maintain juvenile institutions in a sanitary condition.

[9]Examples would include failures to discipline employees whose conduct warranted discipline, failures to set standards and monitor the performance of employees, and failures to establish adequate lines of communication with police agencies and the board of supervisors.

It does not require the establishment of specific performance evaluation criteria to show that if such conditions existed they could reasonably be attributed to inadequate management by respondent. Inefficiency is a proper ground for dismissal of a civil service employee. In *Wilson* v. *State Personnel Bd.,* 58 Cal.App.3d 865, 880 [130 Cal.Rptr. 292], the court said, "Inefficiency may be established without evidence of the existence of a specific rule. . . . [To require a specific rule] would place upon state agencies the impossible burden of attempting to conjure up all the various hypothetical forms of inefficiency which could occur on the job and then commit them to writing. The product of such a task would reach unmanageable proportions, and not all of the reasonably possible situations would ever be covered."

Because the trial court disposed of this case on procedural grounds, it did not review the many volumes of evidence produced at the commission hearings to determine whether the evidence supported the commission's findings. We hold that the procedural errors prior to respondent's discharge do not justify the order reinstating him in his position or the other orders of the trial court restricting respondent's discipline for the conduct in question. On remand the trial court should proceed to consider respondent's contentions concerning the conduct of the commission's hearings and the evidence in support of the commission's findings. If the evidence supports the commission's findings, the petition for writ of mandate should be denied, except to the extent that back pay is awarded pursuant to *Barber* v. *State Personnel Bd., supra,* 18 Cal.3d 395, 401-403, 405.

The judgment is reversed.

Kaus, P. J., and Hastings, J., concurred.

A petition for a rehearing was denied March 24, 1978, and respondent's petition for a hearing by the Supreme Court was denied April 19, 1978.