[Civ. No. 56006. Second Dist., Div. Five. Oct. 10, 1979.]

TEMPLE OF INSPIRED LIVING, Plaintiff and Appellant, v. DEPARTMENT OF SOCIAL SERVICE OF THE CITY OF LOS ANGELES, Defendant and Respondent.

COUNSEL

Millstone, Berman & Wechsler and Alvin Wechsler for Plaintiff and Appellant.

Burt Pines, City Attorney, Thomas C. Bonaventura, Senior Assistant City Attorney, and Mark C. Allen III, Deputy City Attorney, for Defendant and Respondent.

OPINION

ASHBY, J.—Respondent Department of Social Service of the City of Los Angeles is responsible for the regulation of bingo games for charity authorized by Penal Code section 326.5. Appellant Temple of Inspired Living (TOIL), is a charitable and religious organization, whose application for a bingo license was denied by respondent. The trial court denied appellant's petition for writ of mandamus under Code of Civil Procedure section 1094.5 to reverse such decision.

Appellant submitted its application for a bingo license October 4, 1977. The license was denied by the manager of the Department of Social Service on February 28, 1978, on the grounds that (1) appellant intended to compensate its members for operating bingo games; (2) appellant intended to use bingo proceeds for other than charitable purposes; and (3) appellant intended to permit a minor to participate in operation of its bingo games. On March 4, 1978, appellant requested an appeal.

A hearing was held before a hearing officer on March 22, 27, 29 and 31, 1978. The hearing officer submitted a report to respondent on April 13, 1978, recommending that the license application be denied. The hearing officer found, consistent with respondent's stated reasons for denial:

1. That appellant offered compensation to Janet Williams and Selma Allen to assist in the operation of appellant's bingo games. (Pen. Code, § 326.5, subds. (b), (h).) Ms. Williams testified that Ned North, appellant's bishop-director, told her in late September 1977 that she would come home every night with cash in her pocket from each night's bingo proceeds. Ms. Allen testified that she was offered a position as a bishop on October 10, 1977, by Bishop North and Prime Minister Frank Winston and was told her salary would be determined by the extent of her participation in the bingo operation.

2. That appellant intended to use bingo proceeds for noncharitable purposes. (Pen. Code, § 326.5, subds. (a), (j).) Bishop North told Ms. Williams in late September or early October 1977 that the proceeds from bingo would be used to finance his campaign for governor. In addition, Ms. Allen was told that if she made a $10,000 contribution and a $40,000 interest-free one year loan to appellant, her loan would be repaid from bingo proceeds, a diversion of bingo proceeds from charitable purposes.

3. That appellant intended to allow a minor to participate in bingo games. (Pen. Code, § 326.5, subd. (e).) Bishop North offered to hire Ms. Williams' 10-year-old daughter to sort the bingo cards.

On April 20, 1978, the manager of the Department of Social Service notified appellant that she had received the report of the hearing officer and that appellant's application for the license was denied.

██ Appellant contends that it was denied due process and a fair hearing because (1) the hearing officer followed no formal rules of procedure for the format of the hearing; (2) appellant's representative was absent for a portion of the hearing; (3) the hearing officer abdicated judicial responsibility to the agency by sustaining respondent's claim of privilege as to a portion of its investigative files, without examining the files himself; (4) appellant was not supplied with a copy of the hearing officer's report and recommendations prior to the final denial of the license; (5) appellant was not given an opportunity to argue the hearing officer's report prior to final denial; and (6) respondent failed to make adequate findings. None of these contentions has any merit.

At the hearing before a hearing officer appellant TOIL was represented by its prime minister, Frank Winston. Winston stated at the beginning of the hearing that appellant's attorney was out of the country but that

Winston felt "perfectly competent" to handle the matter. The hearing lasted for 4 days, occupying 600 pages of reporter's transcript. On the second day of the hearing, Winston inquired "under what identifiable rules this hearing is being conducted?" The hearing officer replied that it was being conducted under rule 5 of the bingo regulations of the Department of Social Service.[1]

Appellant's claim that it was denied due process by the absence of formal rules specifying a format for conduct of the hearing is utterly without merit. It is not necessary that a statute or regulation specify a particular method of proceeding, so long as there is reasonable notice and reasonable opportunity to be heard. (*Drummey* v. *State Bd. of Funeral Directors*, 13 Cal.2d 75, 80-81 [87 P.2d 848]; *CEEED* v. *California Coastal Zone Conservation Com.*, 43 Cal.App.3d 306, 329 [118 Cal.Rptr. 315].) The manner of proceeding is controlled by the hearing officer, but the format is usually substantially like that employed in civil trials. (Cal. Administrative Agency Practice (Cont.Ed.Bar 1970) §§ 3.1, 3.2, p. 142.) Respondent's representative courteously attempted to assist Winston by providing him a copy of the procedures used by the civil service commission. Appellant makes no showing whatsoever that the procedure used was improper or unfair to appellant in any way. (See *Baker* v. *Wadsworth*, 6 Cal.App.3d 253, 264 [85 Cal.Rptr. 880]; *Roth* v. *City of Los Angeles*, 53 Cal.App.3d 679, 690-691 [126 Cal.Rptr. 163].)

■ Appellant next contends that a portion of the hearing was conducted in appellant's absence. Respondent had several exhibits to introduce. The hearing officer suggested it would save time if all the

---

[1]Rule 5 of the bingo rules provides: "AN APPLICANT ORGANIZATION DENIED THE ISSUANCE OF A BINGO LICENSE MAY FILE A NOTICE OF APPEAL WITH THE GENERAL MANAGER OF THE DEPARTMENT WITHIN TEN DAYS AFTER THE DATE OF NOTIFICATION OF SAID DENIAL. THE NOTICE OF APPEAL SHALL SET FORTH IN DETAIL THE GROUNDS UPON WHICH THE APPEAL IS BASED. [¶] WITHIN 15 DAYS AFTER RECEIPT OF THE NOTICE OF APPEAL, A HEARING OFFICER DESIGNATED BY THE GENERAL MANAGER SHALL CONDUCT A HEARING TO RECEIVE TESTIMONY AND EVIDENCE REGARDING THE APPEAL. AT THE APPEAL HEARING THE APPLICANT ORGANIZATION MAY PRESENT TESTIMONY AND EXAMINE WITNESSES IN SUPPORT OF ITS CONTENTION THAT SAID APPLICATION SHOULD NOT BE DENIED. [¶] THE HEARING OFFICER SHALL SUBMIT A REPORT AND RECOMMENDATION TO THE GENERAL MANAGER FOR FINAL DETERMINATION WITHIN TEN DAYS AFTER CONCLUSION OF THE HEARING. [¶] THE GENERAL MANAGER SHALL NOTIFY THE APPELLANT AS TO THE FINAL DETERMINATION WITHIN TEN DAYS AFTER RECEIPT OF THE HEARING OFFICER'S REPORT AND RECOMMENDATION."

exhibits were marked at one time by the reporter, and ordered a five-minute recess for this purpose. After the recess, Winston, who was out in the hall, was notified the witness was ready to resume the stand. He failed to return to the hearing room. A document, a memo from Ned North to Frank Winston entitled "Economic feasibility for using bingo income for funding Branch Church Expansion in California" was offered into evidence. The hearing officer stated, "Let the record reflect that Prime Minister Winston has chosen not to return to the hearing although he has been notified twice that the hearing has begun. Hearing no objection, the exhibit will be admitted." Winston subsequently returned to the hearing room and objected to the exhibit but was informed that it already had been admitted.

So far as the record shows, Winston's absence was informed, voluntary and wilful. Appellant was not denied an opportunity to be heard. (*McGinn* v. *Board of Health,* 113 Cal.App. 228, 231 [298 P. 118].) In any event, appellant suffered no prejudice as a result of this absence, since the hearing officer did not rely on the exhibit.

■ Appellant next contends the hearing officer abdicated his judicial responsibility to respondent in ruling on respondent's claim of privilege as to certain matters in its investigative file. When respondent's principal investigator was on the stand, Winston requested that the entire investigative file be turned over to him for examination. Respondent objected that the file contained memoranda, notes and communications which were privileged. The hearing officer requested respondent to identify by category those items which were privileged, which respondent did. The claim of privilege was sustained as to many of those items but overruled as to others. The rest of the file was then turned over to Winston. Thus the record does not show that the hearing officer abdicated his responsibility. The hearing officer was not authorized to examine the privileged matter himself. (See Law Revision Com. comment to Evid. Code, § 915.) Appellant had no right to examine the file on a fishing expedition. Appellant did not establish good cause and has not demonstrated the hearing officer erred in partially denying appellant's midtrial discovery motion. (Cal. Administrative Agency Practice (Cont.Ed.Bar 1970), *supra,* § 2.58, pp. 95-96, § 2.68, p. 104.)

■ Appellant next contends that it was not provided with a copy of the hearing officer's report and recommendations (dated Apr. 13, 1978), nor with an opportunity to file objections thereto or to argue the report to

the general manager, prior to the general manager's final determination denying the license on April 20, 1978. Appellant contends it was entitled to a copy of the report and a prior opportunity to file objections and to argue, under sections 19.35 and 19.36 of the Los Angeles Administrative Code.

Appellant's reliance upon these sections is misplaced. These provisions apply only where there is a right of appeal to the governing *board* of a department created by section 70 of the Los Angeles City Charter. (Los Angeles Admin. Code, §§ 19.24, 19.25, subd. 2.) The city departments listed in subdivisions (a) and (b) of section 70 of the Los Angeles City Charter are under the control and management of a board of five commissioners. However, the Department of Social Service is created under subdivision (c) of section 70, which provides that it shall be under the control and management of a general manager. Under the charter, it is the general manager who supervises, controls, regulates, and manages the department and exercises the powers conferred upon the department by law. (Los Angeles City Charter, §§ 77, 78, 80, subd. (b).) The authority to issue bingo licenses is conferred upon the Department of Social Service, i.e., upon the general manager. (L.A. Mun. Code, § 44.52.) Under the applicable regulations, the appeal is to the general manager, not a board. (Bingo Rules and Regulations, § 5, *ante,* fn. 1.) The procedures applicable to appeals to a board are not controlling.[2]

Thus the Los Angeles Administrative Code did not require that appellant be given a copy of the hearing officer's report and an opportunity to object or argue the report prior to final denial by the general manager. Nor is such opportunity required by constitutional due process of law. (*Dami* v. *Dept. Alcoholic Bev. Control,* 176 Cal.App.2d 144, 150-154 [1 Cal.Rptr. 213].)

■ Finally, appellant cites the holding of *Topanga Assn. for a Scenic Community* v. *County of Los Angeles,* 11 Cal.3d 506, 515 [113 Cal.Rptr. 836, 522 P.2d 12], that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order. Appellant contends the general

[2]The Department of Social Service has a board of commissioners but it is not a governing board. The control of the department is vested in the general manager. (Los Angeles City Charter, §§ 70, 77, 78, 80, subd. (b).)

manager's final denial of the license application is invalid because the general manager did not set forth findings in her letter of April 20, 1978.[3]

This argument has no merit. The reasons for denial of the license were fully set forth in the hearing officer's report and recommendations. The hearing officer recommended the application be denied for the same three reasons cited by respondent when it initially denied the application on February 28, 1978. The general manager obviously incorporated the report of the hearing officer, which satisfies the requirement for findings sufficient to permit judicial review. (*McMillan* v. *American Gen. Fin. Corp.,* 60 Cal.App.3d 175, 182-185 [131 Cal.Rptr. 462].)

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

---

[3]That letter stated:
"Dear Dr. Winston:
"I have received the Report and Recommendation of Hearing Examiner Stuart Herman regarding your appeal of the denial of a Bingo License to The Prime Minister of the Temple of Inspired Living. [¶] This letter is to notify you the License is *DENIED.*"