[Civ. No. 23912. Fourth Dist., Div. Two. Apr. 1, 1981.]

GERALD W. DOYLE, Plaintiff and Appellant, v.
CITY OF CHINO et al., Defendants and Respondents.

COUNSEL

Welebir & Brunick and William J. Brunick for Plaintiff and Appellant.

Jimmy Gutierrez, City Attorney, Gutierrez & Bidart, Ochoa, Barbosa & Crook, Ochoa, Barbosa & Glennon, Henry S. Barbosa, George D. Crook and Richard J. Morillo for Defendants and Respondents.

OPINION

**THE COURT.**\*—Gerald Doyle appeals from a judgment denying his petition for a writ of mandate. (Code Civ. Proc., § 1094.5.) The trial court denied the writ and granted summary judgment for respondent City of Chino (Chino).

---

\*Before Gardner, P. J., Tamura, J., and Morris, J.

## THE FACTS

The facts are substantially undisputed by the parties.

Doyle was Chino's police chief. In December 1979, the city manager informed Doyle that his salary would be cut 10 percent effective January 1980. The city council confirmed the reduction in executive session. While Doyle sought review of that matter before the full council, he received a letter on January 28, 1980, summarily terminating his employment. The letter informed him of his right to an administrative appeal. Respondent Chino concedes that this initial action by the city manager violated Doyle's *Skelly* rights since no notice or opportunity to respond was afforded him.[1]

Doyle claims he is entitled to reinstatement prior to any administrative appeal. Initially on February 4, he requested reinstatement prior to any administrative appeal. The city manager rejected that request. On February 25, the city manager informed Doyle by letter of the reasons he was terminated. The letter further stated: "At the request of your counsel, I have scheduled February 29, 1980 at 3:00 p.m. in my offices to discuss the matter further. In the event that you are not satisfied with that opportunity to express your views, you will have the opportunity on March 5, 1980 at 6:00 p.m. to confront and cross-examine all adverse witnesses, to subpoena any witnesses on your behalf and have the matter of your termination heard and considered by the City Council."

On February 25, Doyle's attorney informed Chino's special counsel that unless Doyle was first reinstated he would not attend the confer-

---

[1]*Skelly* v. *State Personnel Board* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774], held that permanent state civil service employees possess a property interest in continued employment, and prior to the termination due process requires that the employee be accorded certain minimum procedural rights, including notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and a right to respond, orally or in writing, to the authority initially imposing discipline. (*Id.*, at p. 215.)

Chino argues the chief of police serves at the pleasure of the city council, and therefore has no legally enforceable right to continued public employment. However probationary employees are not without *Skelly* rights when the alleged basis for job termination is based on charges of misconduct which stigmatize one's reputation or opportunity to earn a living. (*Lubey* v. *City and County of San Francisco* (1979) 98 Cal.App.3d 340, 346 [159 Cal.Rptr. 440].) Doyle's status here is akin to a probationary employee since he has no legally enforceable right to continued public employment. In our view, the circumstances surrounding Doyle's dismissal would stigmatize him professionally because they substantially involved his on-the-job performance.

ence on February 29. The letter also pointed out that the city manager was not Mr. Doyle's idea of an impartial tribunal, since it was the city manager who terminated Doyle. Doyle failed to appear on February 29.

On March 3, Doyle's attorney further informed Chino's counsel that he urged Mr. Doyle not to appear for his hearing before the city council on March 5. Again, counsel reiterated the request for reinstatement as a condition precedent to participating in any administrative appeal. Chino refused to reinstate Doyle.

Doyle wilfully failed to appear before the city council. The hearing proceeded in his absence. The council took evidence in Doyle's absence on six general charges. In paraphrased form, the charges were that: (1) Doyle misrepresented to his department the position of the city manager with respect to operational and organizational matters; (2) Doyle failed to establish a long range plan in connection with the return of a command position; (3) Doyle subverted the recognized chain of command within his department; (4) Doyle misrepresented to the city manager the view of bureau commanders regarding changes in the assignments of those commanders; (5) Doyle discredited the management team by insinuating that the city manager caused Doyle to be unfavorably considered for an appointment as Police Chief of Santa Monica, California; (6) Doyle intimidated subordinates to deflect criticism from his own failings as police chief. These charges had been previously explained in greater detail to Doyle's counsel in the February 25 letter.

The council found evidence to support all six charges and affirmed the dismissal. Doyle was awarded back pay up to and including March 5.

### REMEDY OF REINSTATEMENT

We deal with the question of what is the appropriate remedy for an individual who has been terminated from his job in violation of his *Skelly* rights. (See fn. 1, *ante*.)

Doyle contends he is entitled to reinstatement under the due process clauses of the California Constitution (art. I, § 7) and the United States Constitution (5th and 14th Amendments). He also claims his reinstatement right under Government Code section 3304. The trial court determined petitioner's sole remedy was back pay, since even

though Doyle was wrongfully discharged initially his termination was later upheld by an administrative body. We agree with the trial court.

Petitioner is pumping a dry well in arguing for a constitutional right to preappeal reinstatement. In *Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395 [134 Cal.Rptr. 206, 556 P.2d 306], the Supreme Court explained, "[T]he remedy for the employee in these cases is to award back pay for the period of wrongful discipline. Thus, damages consist only of back pay for the period discipline was improperly imposed, i.e., from the date of actual discipline to the time discipline was validated by the hearing." (*Id.*, at p. 402, citations omitted.) Other authorities are in accord. (*Warren* v. *State Personnel Bd.* (1979) 94 Cal.App.3d 95, 112 [156 Cal.Rptr. 351]; *Coleman* v. *Regents of University of California* (1979) 93 Cal.App.3d 521, 526 [155 Cal.Rptr. 589]; *Pipkin* v. *Board of Supervisors* (1978) 82 Cal.App.3d 652, 657 [147 Cal.Rptr. 502]; *Kirkpatrick* v. *Civil Service Com.* (1978) 77 Cal.App.3d 940, 945 [144 Cal.Rptr. 51]; *Fugitt* v. *City of Placentia* (1977) 70 Cal.App.3d 868, 874 [139 Cal.Rptr. 123].) Although this remedy has been questioned (*Civil Service Assn.* v. *City and County of San Francisco* (1978) 22 Cal.3d 552, 568 [150 Cal.Rptr. 129, 586 P.2d 162] , Justice Tobriner conc. and dis.), it has been uniformly adopted as a proper balance between the sovereign's interest in imposing prompt discipline and the employee's right to be free from the trauma of arbitrary and erroneously imposed discipline.

■ Doyle's mandate petition alternatively claims that Government Code section 3304[2] provides him with a statutory basis for reinstatement before any administrative appeal. We disagree. Section 3304 is part of the so-called police officers bill of rights (Gov. Code, § 3300 et seq.) enacted in 1976 (Stats. 1976, ch. 465, § 1, p. 1204). The specific language relied on by petitioner here states: "(b) No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency without providing the public safety officer with an opportunity for administrative appeal."[3]

---

[2]All references are to the Government Code unless otherwise indicated.

[3]"Punitive action" is defined for purposes of the act in section 3303 as: "any action which may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." Chino does not question that the action taken here was "punitive."

Chino did question below whether the position of police chief fell within the meaning of "public safety officer" however. On appeal they all but concede he is a public safety officer, and it would appear to us that such a position falls within the definition set

Petitioner contends that since the statute is silent regarding when the administrative appeal must take place, it must *precede* any punitive action. Doyle's interpretation would essentially amend the statute to read: "No punitive action ... shall be undertaken without *first* providing the public safety officer an opportunity for administrative appeal." (Italics added.) Chino argues that the language of section 3304 means simply that a peace officer is entitled to an administrative appeal *in connection with* any punitive job action undertaken.

Obviously, the wording of section 3304, subdivision (b) contributes to this ambiguity. Neither interpretation is implausible on its face. Moreover, neither party has provided us with any legislative history to aid in construing the Legislature's intent with respect to section 3304, subdivision (b). Nor have our independent efforts revealed any legislative intent with respect to this statute.

■ It is generally accepted that an administrative appeal provides for an independent re-examination of an order or decision made. (*United States* v. *Abilene & So. Ry. Co.* (1924) 265 U.S. 274 [68 L.Ed. 1016, 44 S.Ct. 565, 567]; Davis, Administrative Law Treatise, § 8.18, fn. 1.) Similarly, an administrative appeal may also be taken from notice of a decision or order prior to its actual date of implementation in certain situations. (*Rutherford* v. *Board of Trustees* (1974) 37 Cal. App.3d 775 [112 Cal.Rptr. 560].) Obviously, a decision to terminate an officer's employment, whether implemented yet or not, constitutes punitive action. However, the Legislature has more broadly defined that term to encompass "*any action which may lead* [to discipline]." (See fn. 3, *ante*; italics added.) Reasoning from this, Doyle contends he is entitled to an appeal even before any decision to discipline has been reached. We disagree.

In our view, Doyle's reading of section 3304 would neither assure meaningful review, nor enhance his rights appreciably. Prior to any decision by the police department or city to take disciplinary action, there exists no order or decision which can be challenged as arbitrary, erroneous, or unsupported by the evidence. At best, only the department's internal investigative procedures could be challenged. Therefore, Doyle's request for an administrative appeal is premature. The best

forth in Government Code section 3301. That section provides that a "'public safety officer' means all peace officers, as defined in Section 830.1 and subdivisions (a) and (b) of Section 830.2 of the Penal Code, including peace officers who are employees of a charter city or county."

proof of this is the fact that even if Chino entertained Doyle's request, those administrative appeal proceedings would not be judicially reviewable by writ of mandate. This is necessarily so because such writs issue "... for the purpose of inquiring into the validity of any *final administrative order or decision* ...." (Code Civ. Proc., § 1094.5; italics added.)

We are cognizant of the fact that the broad purpose of the bill of rights is to promote stable relations between public safety employers and employees (§ 3301). However, Doyle and other police officers similarly situated are hardly without rights prior to the point the department makes a decision whether or not to take disciplinary action. To the contrary, the Legislature has provided for separate substantive provisions affording officers rights while under investigation. (§§ 3303, 3307, 3309.) The statutory scheme allows an officer to challenge the investigative procedures directly in superior court (§ 3309.5, subdivision (b)), and to obtain "... injunctive or other extraordinary relief to remedy the violation or to prevent future violations of a like or similar nature ...." (§ 3309.5, subdivision (c).) This opportunity to challenge investigative procedures is itself a significant means to stabilize relations at the predecisional stage and deter abusive investigative practices.

 We conclude that the opportunity for an administrative appeal set forth in section 3304, subdivision (b) should exist once any decision is taken to discipline an officer.[4] To the extent our holding may be viewed as inconsistent with the definition of "punitive action" set forth in section 3303, our interpretation is designed to bring this statute into conformity with general principles of administrative review and Code of Civil Procedure section 1094.5. In this instance, the city promptly informed Doyle of his right to an administrative appeal at the time a decision was reached to terminate his employment. That action was proper and complied with what we determine to be a reasonable meaning of this admittedly ambiguous statute.[5]

---

[4]For example, if a decision has been made to terminate an officer, but the effective date of termination is stayed for a month, the right to an administrative appeal attaches upon the date of the decision rather than the actual date the termination becomes effective.

[5]Our holding with respect to section 3304, subdivision (b) should in no way be interpreted as eliminating the general preremoval safeguards of notice and opportunity to be heard provided in *Skelly*. (See fn. 1, *ante.*) Conversely, the city's failure to comply with *Skelly* here does not justify a full administrative appeal prior to the decision to remove the officer as Doyle suggests.

Petitioner's reliance on *Heyenga* v. *City of San Diego* (1979) 94 Cal. App.3d 756 [156 Cal.Rptr. 496], is misplaced. *Heyenga* involved a police officer's right to a pretransfer hearing under the specific terms of his union's collective bargaining agreement as well as the city's charter. *Heyenga* expressly shunned premising the pretransfer hearing right on section 3304, noting: "[T]he administrative appeal referred to in the statute is not defined." (*Id.*, at p. 760.)

## Superior Court Jurisdiction

Chino contends that Doyle's failure to appear at his administrative appeal dooms his mandate petition in superior court since he failed to exhaust all administrative remedies available.

■ Judicial review by way of writ of mandate is generally foreclosed when all administrative remedies have not been exhausted. (*Wilkinson* v. *Norcal Mutual Ins. Co.* (1979) 98 Cal.App.3d 307 [159 Cal.Rptr. 416].) Doyle pled in his mandate petition that he had exhausted all remedies. Chino unsuccessfully demurred to the petition on this basis.

■ Chino then moved for summary judgment in superior court on the basis that petitioner had received all the relief to which he was entitled (back pay) and that petitioner had failed to pursue his administrative appeal rights. Chino introduced evidence to show Doyle had wilfully failed to attend the appeal. Doyle did not submit any counteraffidavits or evidence to rebut this point. The trial judge granted summary judgment, since wilful absences do not constitute a true exhaustion of the opportunity to be heard. (*Temple of Inspired Living* v. *Department of Social Services* (1979) 97 Cal.App.3d 564, 569 [158 Cal.Rptr. 816].)

Doyle now contends on appeal that exhaustion of his administrative remedies was unnecessary since: (1) the city council was biased and not an impartial administrative tribunal, and (2) appeal to the council would have been a futile gesture since it was predisposed to uphold petitioner's termination. Doyle's contentions, while theoretically meritorious, are not supported by any evidence in the record which would indicate a triable issue on either point.

With respect to bias, Doyle is correct as a threshold matter that his scheduled meeting with the city manager in no way comported with the fair hearing aspect of due process. The city manager was clearly "per-

sonally embroiled" in the matter since he had terminated Doyle's employment a month earlier. (See *Mennig* v. *City Council* (1978) 86 Cal.App.3d 341 [150 Cal.Rptr. 207].)

However, the city manager was not the adjudicatory body charged with providing petitioner his appeal here. The city council performed that duty. Doyle nevertheless urges us to find that the city council was part of a single seamless web of officials out to get him, and therefore was similarly biased.

Doyle relies on *Mennig* to paint that scenario. We hasten to add, however, petitioner's factual situation is wholly inapposite to *Mennig*. In *Mennig*, the record reflected an ongoing embroglio between Mennig as police chief and members of the council. More importantly, individual council members testified in support of charges leveled against Mennig at a civil service hearing. The commission found most charges unsupported by substantial evidence. The city council then acted en banc to review the commission's action, and found grounds upon which to terminate Mennig. The appellate court found the council was personally involved and the likelihood of bias to be constitutionally intolerable. (*Id.*, at p. 351.) (Cf. *Withrow* v. *Larkin* (1975) 421 U.S. 35 [43 L.Ed.2d 712, 95 S.Ct. 1456].)

The facts here do not even colorably approach the council's involvement in *Mennig*. We can only echo the trial judge's observation that "... I cannot make the jump from city manager to city council; and for all the evidence before the court, the city council was an impartial body; ..." There is no evidence here the manager was a member of, related to, or in any way involved with the decision-making processes of the council. At the March 5 hearing, the manager was simply a witness for the city before the council acting as an administrative review panel. Moreover, there is no evidence from which to infer that the grounds for termination involved acrimony between the council and Doyle. The record reflects that any acrimony existed instead between the city manager and Doyle.

Doyle alternatively asserts that any appeal to the city council here would have been a futile effort. (*People* ex rel. *State Pub. Wks. Bd.* v. *Superior Court* (*Tidwell*) (1979) 91 Cal.App.3d 95 [154 Cal.Rptr. 54].) Again, petitioner has failed to present evidence raising a triable issue.

Futility is a narrow exception to the general rule. In *Gantner & Mattern Co.* v. *California E. Com.* (1941) 17 Cal.2d 314 [109 P.2d 932], the court stated, "[t]he exhaustion of remedial procedure as laid down by the statute is required unless the petitioner can positively state that the commission has declared what its ruling will be in a particular case...." (*Id.*, at p. 318.) Petitioner points to only one item of evidence to show futility. It is the letter of February 25 addressed to Doyle indicating that he could meet with the city manager first and then have his administrative appeal if he remained unsatisfied. Doyle contends that "the entire administrative procedure established by the city manager was not in the spirit of due process...."

We cannot agree with Doyle's single seamless web approach. The mere indication that a tentative date for an administrative appeal has or will be set in no way illustrates a fait accompli. Moreover, there is not even a logical inference to be drawn that the city council was predisposed to uphold the discipline in such a proceeding. Doyle has simply failed to produce any objective evidence to illustrate futility. His own speculative, subjective feelings about the matter do not allow him to unilaterally ignore avenues of review. If that were the case, exhaustion would be a dead doctrine.

Doyle's alternative contention is that the specific statutory language of section 3309.5 grants the superior court initial jurisdiction. Section 3309.5 provides in relevant part: "(b) The superior court shall have initial jurisdiction over any proceeding brought by any local public safety department for alleged violations of this section."

We agree with Doyle that section 3309.5, subdivision (b) confers upon the superior court "initial jurisdiction."[6] Further, it is apparent that the superior court here assumed jurisdiction, initial or otherwise, over Doyle's mandate petition since it alleged a violation of section 3304. Doyle would have a legitimate grievance if the superior court had granted Chino's general demurrer on the basis of lack of subject matter jurisdiction. However, as we explained in our discussion of exhaustion, the court rejected Chino's request for a demurrer to the petition. The trial court properly assumed jurisdiction, however simply ruled against Doyle on summary judgment.

---

[6]Nowhere in section 3300 et seq. is there any definition of the term "initial jurisdiction." We cannot determine if the Legislature intended this term to mean the same thing as "original jurisdiction" or something else. For purposes of this appeal, we have

The trial court's ruling on summary judgment with respect to any statutory violation was correct. We read section 3304 to guarantee a police officer be afforded the opportunity for an administrative appeal in connection with any decision to discipline an officer. The key word here is opportunity. The "opportunity" for an administrative appeal necessarily implies that such a hearing comport with standards of fair play and due process. Obviously the "opportunity" is a sham if the administrative body is biased, predisposed or otherwise prejudiced.

Doyle alleged that the administrative body did not provide him with an opportunity for a fair hearing in his petition. That allegation properly invoked the superior court's "initial" jurisdiction. However, upon piercing the pleadings on summary judgment, Doyle was unable to produce any evidence to suggest that the city council was biased or predisposed to affirm the termination. The superior court found that Doyle had not been denied the "opportunity" for an administrative hearing, or to state it another way, Doyle failed to produce any evidence that would allow the court to find a triable issue of fact as to denial of that opportunity. Therefore, the court correctly concluded there was no evidence of a violation of section 3304. The principles of summary judgment do not differ in this context from those applicable generally to civil litigation. (See *People* ex rel. *State Pub. Wks. Bd.* v. *Superior Court (Tidwell), supra*, at p. 102.)

Judgment affirmed.

Appellant's petition for a hearing by the Supreme Court was denied June 17, 1981. Bird, C. J., was of the opinion that the petition should be granted.

---

assumed that "initial jurisdiction" means that the superior court is the appropriate trial court forum to litigate rights under section 3300 et seq. rather than justice or municipal courts.