[L.A. No. 31654. Aug. 29, 1983.]

SEA AND SAGE AUDUBON SOCIETY, INC., et al.,
Plaintiffs and Appellants, v.
PLANNING COMMISSION OF THE CITY OF ANAHEIM et al.,
Defendants and Respondents;
TEXACO-ANAHEIM HILLS, INC.,
Real Party in Interest and Respondent.

**COUNSEL**

Wenke, Taylor, Evans & Ikola and Richard A. Derevan for Plaintiffs and Appellants.

William P. Hopkins, City Attorney, and Jack L. White, Assistant City Attorney, for Defendants and Respondents.

Latham & Watkins, Robert K. Break, Albert F. Shamash and Thomas A. May for Real Party in Interest and Respondent.

**OPINION**

**KAUS, J.**—In December 1980, plaintiffs Sea and Sage Audubon Society, Inc., and the Juaneno Band of Mission Indians brought this administrative mandamus action against defendant City of Anaheim (city), challenging the city's approval of a development project proposed by real party in interest Texaco-Anaheim Hills, Inc. (Anaheim Hills). The trial court granted summary judgment against plaintiffs on the ground that they had failed to ex-

haust their administrative remedies. On this appeal, plaintiffs challenge the dismissal of their action on several theories not raised below, asserting that their failure to exhaust administrative remedies should be excused in light of (1) their "public interest" status, (2) the alleged "futility" of further administrative action on their part, or (3) the alleged invalidity of a filing fee imposed by the city as part of its administrative appeal process. We conclude that plaintiffs' contentions are either untenable as a matter of law or may not be raised for the first time on appeal. Accordingly, we affirm the judgment.

I

On October 6, 1980, the Anaheim Planning Commission held a public hearing on a planned community development project, submitted by Anaheim Hills, which had been under consideration for some time. Plaintiffs appeared at the hearing and opposed the project, maintaining, inter alia, that the environmental impact report (EIR) which had been prepared in connection with the project was inadequate and should be rejected as incomplete. After questioning the developer and eliciting its agreement to alter several aspects of the project in response to some of plaintiffs' concerns, the planning commission voted to certify as complete the EIR and to approve the three tentative tract maps that embodied the proposed project. At the conclusion of the hearing, the chairman advised all those present that if they disagreed with the commission's decision they had 15 days to appeal the decision to the city council. Following the hearing, the commission's certification of the EIR and approval of the tentative tract maps were placed on the "consent calendar" of the next regular city council meeting, scheduled for October 14, 1980.

Under the then-applicable local ordinances and resolutions, "any interested person" was authorized to appeal the commission decision to the city council by (1) filing "an appeal or complaint . . . with the City Clerk" within 15 days of the decision, and (2) paying an administrative appeal fee equal to one-half of the original filing fee for the project under consideration; in this case the appeal fee came to $607. Rather than filing an appeal and paying the fee, plaintiffs' representative appeared at the October 14th city council meeting and orally requested the council in effect to waive the fee requirement by postponing a vote on the consent calendar items and scheduling a public hearing on the matter on the council's own motion. One council member noted that the council had heard extensive discussion concerning this development from representatives of the plaintiff organizations at a public hearing held just a few months earlier in connection with the adoption of a proposed amendment to the city's general plan. He asked plaintiffs' representative what new information had come to light that would

justify the scheduling of another public hearing on the council's own motion. The representative responded that there had been further developments, but that she was not prepared at that time to detail the evidence that would be presented at the public hearing that she was requesting. Several council members then explained that the appeal fee was intended to defray the costs of "advertising and processing the appeal" and they did not believe that, in fairness, the public treasury should bear those costs without some greater showing. One of the members expressly stated, however, that the council's unwillingness to waive the fee did not reflect any intent to deny "other remedies that [are] available to [plaintiffs, including] the right of appeal"; he reminded plaintiffs' spokeswoman that plaintiffs had until 5 p.m. on October 21, 1980, to file such an appeal. At the conclusion of the discussion, the consent calendar items were approved.

On October 20, plaintiffs' attorney mailed a brief letter to the city council, stating that plaintiffs were "thereby appealing the planning commission's certification of the environmental impact report on the Anaheim Hills project." No filing fee was enclosed. The letter was received by the city clerk's office on October 22, 1980, one day after the filing deadline. At that point, the purported appeal was evidently rejected by the city; the record does not reveal whether the rejection was based on the absence of the filing fee, the lateness of the filing, or—as is most likely—both.

A month and a half later, plaintiffs filed this administrative mandamus action, seeking to compel the city to vacate its approval of the tentative tract maps because of the alleged inadequacy of the EIR. The city and Anaheim Hills demurred on the ground that plaintiffs had failed to allege that they had exhausted their administrative remedies. Plaintiffs then filed an amended complaint, setting forth the actions that they had taken before the planning commission and city council and alleging that such actions constituted adequate exhaustion of the available administrative remedies.

The city and Anaheim Hills then moved for summary judgment on the exhaustion issue, relying on a declaration and documentary evidence substantiating the facts related above. In their opposition to the summary judgment motion, plaintiffs relied on three contentions: (1) that they had complied with the city requirements for filing an administration appeal by having their representative appear at the city council meeting and orally request review; (2) that they had complied with the review procedure by mailing a written complaint within 15 days, even though it had not been received by the city until after the 15-day period; and (3) that there was a triable issue of fact as to whether the written appeal had been received on or before October 21, 1980. On the basis of the uncontradicted declaration and doc-

umentary evidence before it, the trial court rejected plaintiffs' contentions and entered summary judgment in favor of the city and Anaheim Hills.

On appeal, plaintiffs no longer contend that they actually exhausted their administrative remedies by their actions at the administrative level. Instead, they now assert that their failure to exhaust such remedies should be excused in light of (1) their "public interest" status; (2) the alleged "futility" of further pursuit of an administrative remedy in this case; and (3) the alleged invalidity of the city's administrative appeal filing fee. In analyzing these contentions, we first turn to the threshold question of whether plaintiffs may properly raise these contentions for the first time on appeal.

## II

■ As a general rule, "issues not raised in the trial court cannot be raised for the first time on appeal." (*Estate of Westerman* (1968) 68 Cal.2d 267, 279 [66 Cal.Rptr. 29, 437 P.2d 517] and cases cited.) On a number of occasions, however, appellate courts have relaxed this rule and have permitted a party to raise belatedly "a pure question of law which is presented on undisputed facts." (See, e.g., *Hale* v. *Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512]; *Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534].) This forgiving approach has been most frequently invoked when "important issues of public policy are at issue." (*Hale* v. *Morgan, supra,* 22 Cal.3d at p. 394; *Bayside Timber Co.* v. *Board of Supervisors* (1971) 20 Cal.App.3d 1, 5 [97 Cal.Rptr. 431].) Asserting that the new issues which they seek to raise on this appeal involve "purely legal" questions and implicate important issues of public policy, plaintiffs urge us to consider their contentions despite their failure to litigate them below.

Although we have some question whether any of the matters are properly presented, giving plaintiffs the benefit of the doubt we shall discuss the merits of those contentions raised on appeal which do in fact present "purely legal" issues. As we explain, however, at least one of the plaintiffs' claims—the alleged arbitrariness of the city's filing fee—involves factual questions which cannot be resolved on the present record.

## III

■ Relying on the Court of Appeal decision in *Environmental Law Fund, Inc.* v. *Town of Corte Madera* (1975) 49 Cal.App.3d 105 [122 Cal.Rptr. 282], plaintiffs contend that they should be excused from the requirements of the exhaustion doctrine because they are public interest organizations seeking to further public, rather than private, rights. Although

the city and Anaheim Hills suggest that the *Corte Madera* decision is inconsistent with established exhaustion of remedies authorities and should not be followed, we have no occasion in this case to pass on the validity of the *Corte Madera* holding itself, because we conclude that, in any event, the case does not sustain plaintiffs' claim. In *Corte Madera,* the court found that a public interest litigant should not be barred from judicial relief under the exhaustion doctrine when it had not participated in, nor received any notice of, the relevant administrative proceedings. (49 Cal.App.3d at pp. 113-114.) In this case, by contrast, plaintiffs did have notice of the administrative proceedings and actively participated at every stage of the hearing process. Indeed, as we have seen, at both the planning commission hearing and the city council meeting plaintiffs were explicitly reminded of the available administrative appeal. Under these circumstances, plaintiffs' failure to exhaust their administrative remedies cannot be excused under *Corte Madera.* (Cf. *La Costa Beach Homeowners Assn.* v. *Wayne* (1979) 89 Cal.App.3d 327, 331 [152 Cal.Rptr. 355].)

IV

■ Plaintiffs alternatively argue that their failure to appeal the planning commission decision to the city council should be excused on the ground that such an appeal would obviously have been "futile." Pointing out that just a few months earlier the city council had approved an amendment to the city's general plan which authorized the use contemplated by the three tract maps and that the council had approved the tentative tract map item on its October 14th consent calendar, plaintiffs maintain that it is clear that the city council would have rejected any appeal that they filed.

Plaintiffs' contention misconceives the scope of the so-called "futility" exception to the exhaustion doctrine. As the Court of Appeal explained in *Doyle* v. *City of Chino* (1981) 117 Cal.App.3d 673, 683 [172 Cal.Rptr. 844]: "Futility is a narrow exception to the general rule. In *Gantner & Mattern Co.* v. *California E. Com.* (1941) 17 Cal.2d 314 [109 P.2d 932], [318,] the court stated, '[t]he exhaustion of remedial procedure as laid down by the statute is required unless the petitioner *can positively state* that the commission has declared *what its ruling will be in a particular case . . . .*'" (Italics added.) (See also *Ogo Associates* v. *City of Torrance* (1974) 37 Cal.App.3d 830, 834 [112 Cal.Rptr. 761].)

In this case, the council's actions do indicate that it favored the proposed development *as a legislative policy matter.* As far as the present record reveals, however, the council had never addressed plaintiffs' specific legal challenges to the adequacy of the EIR; it is those challenges, of course, which form the basis of plaintiffs' underlying administrative mandamus ac-

tion. Indeed, as already noted, one council member specifically informed plaintiffs at the October 14th meeting that the council's unwillingness to schedule another public hearing on its own motion did *not* reflect a determination on the merits of any claims that plaintiffs might raise through an appeal of the planning commission's decision. In view of these facts, plaintiffs cannot properly maintain that the pursuit of their administrative appeal would have served no purpose or that the council's disposition of such an appeal was a fait accompli.

## V

Finally, plaintiffs contend that their failure to exhaust administrative remedies should be excused because of the alleged invalidity of the city's administrative appeal filing fee. Although it is not clear that plaintiffs' failure to pay the fee was the sole basis on which the city rejected the appeal—as noted, the appeal was also filed one day late—there is a more fundamental flaw in this posture.

Plaintiffs' attack on the filing fee proceeds on two separate fronts: first, plaintiffs maintain that the city was not authorized to impose such a fee on any party other than the subdivider; second, they suggest that, in any event, the amount of the fee was arbitrary and excessive. As we explain, the first contention is erroneous as a matter of law and the second is not properly presented.

■ At the time of the administrative proceedings in this case in October 1980, the Subdivision Map Act specifically authorized the city (1) to permit "any interested person adversely affected by a decision of the advisory agency [here, the planning commission]" to appeal the commission's decision to the city council (Gov. Code, § 66452.5),[1] and (2) to "establish reasonable fees for the processing of tentative, final and parcel maps and for other procedures required or authorized by this division or local ordinance." (§ 66451.2.) Nothing in the applicable provisions suggests that the statutorily authorized fee could not be imposed on "any interested person" who invoked the local appeal process, and plaintiffs have cited no authority which has interpreted these sections to prohibit such a fee. In our view, a plain reading of the provisions confirms the city's right to impose a reasonable fee in this situation.

Plaintiffs contend, however, that a 1980 amendment to another provision of the Subdivision Map Act, section 66452.5, subdivision (e)—which became effective on January 1, 1981—precludes a local entity from imposing

[1]Unless otherwise indicated, all statutory references are to the Government Code.

such a fee on anyone other than the subdivider.[2] While the new statutory language on which plaintiffs rely postdated the events in question, plaintiffs assert that it should nonetheless be applied to all cases—like this one—that were pending on appeal when the statute went into effect.

There are two answers to this contention. First, even if we were to assume that the new statute were intended to limit a city's general authority to impose fees on anyone other than a subdivider, under established principles of statutory interpretation, this statute—like most legislative enactments—would apply prospectively, and would not excuse nonpayment of a local appeal fee which was valid when imposed. (See, e.g., *Wilke & Holzheiser, Inc.* v. *Dept of Alcoholic Bev. Control.* (1966) 65 Cal.2d 349, 371-373 [55 Cal.Rptr. 23, 420 P.2d 735].) Second, the 1980 legislation of which section 66452.5, subdivision (e) was a small part was directed generally at protecting the rights of tenants faced with a proposed condominium conversion, and the legislative history of the enactment makes it clear that the statutory language on which plaintiffs rely was simply intended to authorize local entities to charge subdividers for the additional expenses incurred in providing the various notices to tenants that are now required under the new legislation. (See Legis. Counsel's Dig. of Sen. Bill No. 1645, 4 Stats. 1980 (Reg. Sess.) Summary Dig., p. 357.) Plaintiffs point to nothing which suggests that the Legislature intended this provision to foreclose a local entity from imposing reasonable fees on "interested persons"—like the plaintiff organizations—who seek to invoke the administrative appeal process. The reference to section 66451.2 in section 66452.5, subdivision (e) merely points to the source of power to collect a fee.

■ Finally, plaintiffs claim that even if the city was authorized to condition their administrative appeal on the payment of some fee, the $607 fee imposed in this case cannot be sustained. Plaintiffs argue in essence that the fee schedule established by the applicable city ordinance—setting the appeal fee at one-half the initial filing fee for the proposed subdivision, so that the fee varies with the size of the subdivision—is not a "reasonable fee" within the meaning of section 66451.2. That section currently provides that local agencies "may establish reasonable fees for the processing of tentative, final and parcel maps and for other procedures required or authorized by this

---

[2]As enacted in 1980, section 66452.5, subdivision (e) provides in full: "Notice of each hearing provided for in this section shall be sent by United States mail to each tenant of the subject property, in the case of a conversion of residential real property to a condominium project, community apartment project, or stock cooperative project, at least three days prior to any such hearing. The notice requirement of this subdivision shall be deemed satisfied if the notice complies with the legal requirements for service by mail. *Pursuant to Section 66451.2, fees may be collected from the subdivider for expenses incurred under this section.*" (Italics added.)
Plaintiffs base their contention on the emphasized portion of the provision.

division or local ordinance, but the fees shall not exceed the amount reasonably required by such agenc[ies] to administer the provisions of this division."[3]

Although plaintiffs characterize the question of the validity of the fee as purely a question of law, it is plain that the "reasonableness" of a particular fee under section 66451.2 cannot properly be resolved in the abstract. Without an evidentiary record, we cannot determine either (1) the full range or nature of the administrative services and functions which are properly covered by the fee, (2) the reasonable cost of such services and functions, or (3) whether the fee structure in question bears a reasonable relationship to such costs.[4] While plaintiffs assert that the fee at issue is arbitrary on its face, in the absence of relevant factual data we are in no position to determine whether the $607 figure is excessive or whether a fee schedule under which the amount of the fee varies with the size of the proposed development is necessarily "unreasonable" as a matter of law. Because plaintiffs did not pursue this claim below, neither the city nor Anaheim Hills was afforded an opportunity to present relevant factual evidence to support the fee. Indeed, given the presumption of validity traditionally accorded to legislative acts, it is plaintiffs—rather than the city or Anaheim Hills—who bore the initial burden of presenting a prima facie evidentiary showing as to the invalidity of the fee. Having failed to make any such showing,

---

[3]In October 1980, when the administrative proceedings in this case took place, section 66451.2 simply required that the fees established by local entities be "reasonable." The clause expressly limiting such fees to "the amount reasonably required . . . to administer the provisions of this division" was added in 1981. (Stats. 1981, ch. 914, § 6, p. 3459.) Thus, there is a serious question whether, as plaintiffs assert, the fee which they failed to pay in 1980 is properly subject to attack under the current statutory standard.

Because the modification in the statutory language is not crucial to the resolution of this appeal, we shall give plaintiffs the benefit of the doubt and assume, without deciding, that the 1981 legislation simply fleshed out the pre-1981 "reasonableness" standard and thus that the current statutory standard is applicable here. (Cf. *Santa Clara County Contractors* v. *City of Santa Clara* (1965) 232 Cal.App.2d 564, 571-579 [43 Cal.Rptr. 86].) In emphasizing the difference between the pre- and post-1981 statutory language (dis. opn., pp. 424-425, *post*), the dissent seems to be arguing against its own conclusion.

[4]When section 66451.2 was amended in 1981 (see fn. 3, *ante*), a concluding sentence was added to the section to provide that the fees authorized and regulated by the provision "shall be imposed pursuant to Chapter 13 (commencing with Section 54990) of Part 1 of Division 2 of Title 5." The referenced sections—54990 et seq.—apply generally to all local zoning, permit, and water and sewer connection fees, and establish, inter alia, a procedure which local entities must follow in levying new or increased fees. Among other requirements, a local entity must "make available to the public data indicating the amount of cost, or estimated cost, required to provide the service for which the fee or service charge is levied and the revenue sources anticipated to provide the service, including general fund revenues." (§ 54992, subd. (a).)

This statutory scheme makes it clear that the validity of any local fee ordinance is necessarily dependent upon the actual or estimated administrative costs of the service, matters which are obviously factual in nature.

plaintiffs cannot challenge the reasonableness of the fee for the first time on appeal.[5]

The judgment is affirmed. Each party shall bear it own cost on appeal.

Richardson, J., Broussard, J., and Grodin, J., concurred.

**MOSK, J.,** Dissenting.—By affirming the summary judgment against plaintiff Sea and Sage Audubon Society on arid ritualistic grounds the majority evade a legal issue of critical and growing importance in the field of public interest litigation. Because we should address plaintiff's contention that it was excused from the administrative exhaustion requirement by Anaheim's imposition of an arbitrary and excessive appeal fee, I must dissent.

It is the general rule, of course, that issues not raised in the trial court will not be heard for the first time on appeal. (*Estate of Westerman* (1968) 68 Cal.2d 267, 279 [66 Cal.Rptr. 29, 437 P.2d 517].) However, it is also well established that when the issue arises on undisputed facts and raises a question of law the reviewing court may allow the litigant to raise it initially on appeal. (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512]; *Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534]; *Wilson* v. *Lewis* (1980) 106 Cal.App.3d 802, 805 [165 Cal.Rptr. 396]; *Redevelopment Agency* v. *City of Berkeley* (1978) 80 Cal.App.3d 158, 167 [143 Cal.Rptr. 633].) Here Sea and Sage raises the legal question whether, on undisputed facts as to the identity of the parties and the nature of the

---

[5]Contrary to the suggestion in the dissent, we emphasize that we intimate no opinion as to the actual reasonableness or validity of the appeal fee at issue, but conclude simply that plaintiffs may not belatedly raise this claim because of the factual questions involved. Although the dissent speculates that the fee structure is arbitrary on its face and cannot possibly be justified, without knowledge of the relevant facts we cannot say that the overall administrative costs of processing and deciding an appeal—e.g., the cost of notifying neighbors and tenants, the expense incurred in researching and resolving the issues raised—do not bear a sufficient relationship to the general size of a project to render the challenged fee structure reasonable. Certainly the fact that the cost of handling a particular appeal does not correlate precisely with the set fee, or that in some cases somewhat similar appeals may generate different fees, would not necessarily establish that a given fee structure or schedule is unreasonable. As in matters of fiscal planning generally, practical considerations dictate that a fee schedule be based on reasonable generalizations.

The fact that an administrative agency may have the authority to resolve a particular appeal without a full hearing does not necessarily render a general fee schedule unreasonable. Even if the agency ultimately concludes that a hearing is not warranted, the appeal may generate substantial costs relating both to providing notice to interested parties and to the agency's research efforts in deciding that a hearing is unnecessary; the dissent's argument to the contrary is based on the unwarranted assumption that when a hearing is not provided, the agency simply rejects the appeal out-of-hand without performing any duties that may involve administrative expense. In addition, the dissent's reliance on an agency's power to deny an appeal summarily proves too much: if the point were well taken, any fee above the cost of filling in the blanks and mailing a preprinted denial would be excessive.

administrative remedies available, it was excused from the exhaustion requirement.

Moreover, "Appellate courts are more inclined to consider . . . tardily raised legal issues where the public interest or public policy is involved." (*Bayside Timber Co.* v. *Board of Supervisors* (1971) 20 Cal.App.3d 1, 5 [97 Cal.Rptr. 431]; accord, *United California Bank* v. *Bottler* (1971) 16 Cal.App.3d 610, 616 [94 Cal.Rptr. 227].) In *United California Bank,* for example, the court disposed of an appeal from a declaratory judgment concerning certain interests in an *inter vivos* trust on a theory presented for the first time on appeal, i.e., on the ground that certain dispositions violated the rule against perpetuities: "It does not appear that the perpetuities problem was ever brought to the attention of trial court. Appellant raises it for the first time in her brief in this court. Since the rule is based upon public policy rather than private convenience, we cannot invoke any doctrine of waiver, but must face the issue and apply the limitation which the law imposes." (*Id.* at p. 616.) Surely the issue Sea and Sage asks us to address here—whether Anaheim's appeal fee ordinance impermissibly burdens the pursuit of administrative remedies—is of public interest and raises important policy questions concerning access to the administrative appeal process.

Ultimately it is a matter of the reviewing court's discretion whether a litigant will be permitted to raise a new theory for the first time on appeal. (*Solorza* v. *Park Water Co.* (1948) 86 Cal.App.2d 653, 662 [195 P.2d 523]; *Isthmian Lines, Inc.* v. *Schirmer Stevedoring Co.* (1967) 255 Cal.App.2d 607, 610 [63 Cal.Rptr. 458]; *Redevelopment Agency* v. *City of Berkeley* (1978) 80 Cal.App.3d 158, 167 [143 Cal.Rptr. 633].) Because in this case it is the very access to the administrative review process which is at issue, I would allow Sea and Sage to advance the contention that it was excused as a matter of law from the exhaustion requirement by the city's imposition of the appeal fee in violation of relevant statutory limitations. I turn to the merits of this contention.

Preliminarily, I would agree with the majority (part III) that plaintiff is not excused from the exhaustion requirement merely because of its status as a nonprofit public interest group. Although this environmental organization is asserting public rather than private rights, *Environmental Law Fund, Inc.* v. *Town of Corte Madera* (1975) 49 Cal.App.3d 105 [122 Cal.Rptr. 282], on which plaintiff relies, is distinguishable: there the court specifically limited its holding to cases in which the person or group challenging an administrative determination was not itself a "party" to the administrative proceedings. (*Id.* at p. 113.) The court emphasized that the organizations challenging the Corte Madera Planning Commission's actions had not participated in, nor even been given notice of, the commission's

proceedings. Here, although technically not a party to the proceedings before the Anaheim Planning Commission, plaintiff did have notice of the proposed actions and actively participated at every stage of the hearing process. City council members explicitly reminded plaintiff's representative of the available appeal to the city council. We therefore could not excuse Sea and Sage's failure to exhaust administrative remedies on the basis of *Environmental Law Fund* alone.

However, plaintiff also maintains that it was excused from exhausting the administrative remedy of appealing the planning commission's decision to the city council because the $607 appeal fee imposed pursuant to local rule unlawfully burdened its pursuit of that remedy, and because it would have been futile to file an appeal without the requisite fee. With this I agree.

The relevant statutory provisions comprise the Subdivision Map Act. (Gov. Code, § 66410 et seq.) Originally, only subdividers and tenants in certain residential projects could appeal from adverse administrative decisions concerning tract maps. (Gov. Code, § 66452.5, subds. (a) and (b).) To remedy this inequity the act was amended in 1974 to extend the right to appeal to "interested persons" aggrieved. Subdivision (d) of section 66452.5 now provides: "Where local ordinance so provides, *any interested person* adversely affected by a decision of the advisory agency or appeal board may file a complaint with the governing body concerning any decision of the advisory agency or appeal board." (Italics added.)

Section 66451.2, as enacted in 1974, provided that local agencies, such as planning commissions, could levy administrative fees: "The local agency may establish *reasonable* fees for the processing of tentative, final and parcel maps and for other procedures required or authorized by this division or local ordinance." (Italics added.) (Stats. 1974, ch. 1536, § 4, pp. 3473-3474.) In 1981 this provision was amended to add the following: "but the fees shall not exceed the amount reasonably required by such agency to administer the provisions of this division." (Stats. 1981, ch. 914, § 6, p. 3459.) The majority trivialize this amendment: they suggest that the Legislature intended by the additional language merely to "flesh out" the pre-1981 definition of "reasonableness." To the contrary, it bears emphasis that the 1981 amendment was intended to place ceilings on administrative fee schedules, to prevent local agencies and governments from diverting fees to general revenue purposes. I quote from the Legislative Counsel's Digest:

"(1) Existing law authorizes local agencies to charge fees for sewer connections, water connections, zoning variances, zoning changes, use permits, building inspections, building permits, planning services, and for the pro-

cessing of maps and administering other provisions of the Subdivision Map Act.

*"Existing law does not expressly prescribe that such fees be limited so as not to exceed the estimated amount reasonably required to provide the services for which the fees are charged.*

"This bill would require that these fees be limited in such a manner unless the amount of the fee charged in excess of the estimated reasonable cost of providing the services or materials is submitted to and approved by a popular vote of ⅔ of those electors voting on the issue. It would make the limitation on these fees applicable to charter cities. This bill would require a local agency to hold a public meeting, as specified, prior to levying a new fee or service charge, or prior to approving an increase in an existing fee or service charge, and would require that the action be taken by ordinance or resolution." (Legis. Counsel's Dig. of Sen. Bill No. 1005, 4 Stats. 1981, ch. 914, p. 276, italics added.) Moreover, section 1 of the bill stated: "The Legislature finds and declares that as a matter of statewide concern it is necessary for the state to limit the amount of various fees charged by local agencies, including, but not limited to, charter cities, in order to carry out the intent and purpose of Article XIII A of the California Constitution." (Stats. 1981, ch. 914, § 1, p. 3456.) Thus in amending section 66451.2 the Legislature was clearly responding to the potential problem of excessive fees by mandating that they be reasonably related to the costs of the services for which they are charged.

This interpretation is further supported by the language of section 54990 of the act, also part of the 1981 amendment, which reads: "Notwithstanding any other provision of law, when a county or city, including, but not limited to, a charter city or city and county, district, or other public corporation or agency, charges fees for zoning variances, zoning changes, use permits, building inspections, building permits, the processing of maps under the provisions of the Subdivision Map Act, Division 2 (commencing with Section 66410) of Title 7, or planning services under the authority of Chapter 3 (commencing with Section 65100) of Division 1 of Title 7 or under any other authority, *such fees shall not exceed the estimated reasonable cost of providing the service for which the fee is charged,* unless a question regarding the amount of the fee charged in excess of the estimated reasonable cost of providing the services or materials is submitted to, and approved by, a popular vote of two-thirds of those electors voting on the issue." (Italics added.)

Thus, the Subdivision Map Act grants public interest groups such as Sea and Sage the right to appeal from administrative decisions and permits local

agencies to levy fees to defray the expenses of the appeal process. The question remains whether the Anaheim appeal fee structure at issue here is reasonably related to the cost of administering its subdivision appeal process.

The procedure under attack is set out in resolution No. 73R-210, adopted in 1973 by the Anaheim City Council. Section 2 governs developers and provides that "Upon the filing of a tentative map with the City for approval, applicant shall pay a fee of Two Hundred and Fifty Dollars ($250.00), plus One Dollar ($1.00) per lot to the City of Anaheim." In turn, section 5 prescribes the fee for appeals from the decisions of the city's planning commission: "A fee of one-half of the original zoning and land use fee shall be paid upon the filing of an appeal requesting the City Council to review the action taken by the Planning Commission." Pursuant to this scheme Sea and Sage was assessed an appeal fee of $607.

In my view this appeal fee formula is both arbitrary and unreasonable as a matter of law. By no stretch of legal imagination can the requirement that a party seeking to appeal the approval of a development pay one-half the original zoning fee—which is itself calculated in terms of the number of tracts and lots—be said to be "reasonably related" to the cost of administering the appeal process. The majority suggest that some reasonableness adheres in the fact that the appeal fee "varies with the size of the proposed development." In fact, the scheme does *not* gear the fee to the physical size of the challenged project. Because the zoning fee itself, on which the appeal fee is directly based, is calculated in terms of numbers of tracts and lots, the same appeal fee could be levied if different-sized projects were at issue. Nor are the fees a function of the number of maps involved.

An illustration may be helpful here. Under the Anaheim scheme an appeal fee of $500 would be based on a zoning fee of $1,000, which itself could have been levied on a number of different projects, e.g., a project comprising 3 tract maps (at $250 each, a total of $750) and containing a total of 250 lots (at $1 each, a total of $250) would require a zoning fee of $1,000, and hence an appeal fee of $500. However, the same zoning and appeal fees would be assessed for a project composed of 2 tracts of the same size (for a total of $500) divided into 500 smaller lots (for a total of $500), or for a project contained in a single tract (for $250) divided into 750 lots of whatever size (for a total of $750). Each very different project would require a $1,000 zoning fee from its developer and a $500 appeal fee from its "interested" opponent. Thus whether in fact the cost of processing a zoning appeal varies with the size of the property, with the number of maps to be reviewed, or with the nature of the development proposed, Anaheim's one-

half zoning fee scheme is not necessarily related to any of these variables and is therefore patently arbitrary.

The appeal fee at issue here is also unreasonable in light of section 66452.5, subdivision (d), of the Subdivision Map Act and Anaheim's corresponding local rule (Anaheim City Code, § 17.08.100.30), both of which permit the *summary* rejection of an appeal by an "interested person." Although subdivisions (a) and (b) of the act guarantee that the subdivider, or a tenant in a condominium conversion, or the agency itself "shall" be afforded a hearing, subdivision (d), governing appeals by "interested persons," merely provides that "Upon the filing of the complaint, the governing body *may* set the matter for hearing. . . . Such hearing *may* be a public hearing for which notice shall be given in the time and manner provided." Thus the City of Anaheim could collect an appeal fee, dispose of the appeal summarily at little or no expense, and simply use the fee for other municipal expenditures.

Respondents argue nevertheless that the $607 fee—which they repeatedly characterize as "nominal"—is necessary in this case to defray the expenses of "processing the appeal, and noticing and conducting a public hearing, *if one were granted.*" This contention, I have tried to explain, is both factually and legally unpersuasive. It is simply unreasonable and unfair to require a nonprofit group challenging a land use decision on environmental or other public interest grounds to pay what for it is a substantial sum, when it then risks that its complaint will be disposed of by letter and its fee pocketed by the agency or municipality. As a practical matter, which appears to be of callous unconcern to the majority, Anaheim's appeal fee requirement is likely to deny public interest groups and other "interested persons" the pursuit of administrative remedies guaranteed them by the Subdivision Map Act. We should not permit local governing bodies to insulate major land use decisions from public scrutiny by pricing statutory appellate remedies beyond the reach of interested members of the community.

For these reasons, I agree with Sea and Sage that section 5 of Anaheim Resolution No. 73R-210 violates section 66451.2 of the Subdivision Map Act. The requirement of an appeal fee equal to one-half the developer's assessed zoning fee imposes an arbitrary and unreasonable barrier to the pursuit of administrative remedies by "interested persons." Because its appeal from the planning commission's decision was impermissibly conditioned on payment of the $607 fee, Sea and Sage should be excused from the requirement that it exhaust that administrative remedy.

It is ordinarily preferred that persons aggrieved by local agency determinations do their best to comply fully with the prescribed course of ad-

ministrative review before challenging those determinations in court. Here plaintiff could have presented a timely written appeal to the city council, even if it could not afford to include the assessed appeal fee. However, I am persuaded from my examination of the record that such an effort would have been futile. (*Eldridge* v. *City of Palo Alto* (1976) 57 Cal.App.3d 613, 633 [129 Cal.Rptr. 575]; *Ogo Associates* v. *City of Torrance* (1974) 37 Cal.App.3d 830, 834 [112 Cal.Rptr. 761].) It is obvious from the minutes of its October 14 meeting that the city council had no intention of considering any appeal Sea and Sage might have filed without the exorbitant fee. When asked by a representative whether the council might waive the fee requirement in its case, the mayor and one other councilman stated that although they had no desire to deprive Sea and Sage of its right to appeal, they could not waive the fee. Moreover, it was not only the city council's expressed intention to disregard an appeal filed without the substantial appeal fee, but also its legal obligation, pursuant to resolution No. 73R-210, to insist that appeals from planning commission decisions concerning tract maps be thus perfected. The city council therefore would not have accepted a timely Sea and Sage appeal unaccompanied by the $607 fee. I would not condition the availability of judicial review on the pursuit of an idle gesture.

In addition, Sea and Sage repeatedly made its opposition known to the city council by appearing and testifying at hearings and meetings. Under the circumstances, its failure to file a formal notice of appeal did not prejudice the City of Anaheim or Texaco-Anaheim Hills, Inc. Because Anaheim Resolution No. 73R-210 impermissibly burdened and effectively nullified Sea and Sage's statutory right to appeal, it should have been excused from the requirement that it exhaust its administrative remedies in this case.

The majority are clearly in error in their antagonism to the efforts of a nonprofit public interest group that merely seeks an opportunity to have its appeal and an ultimate trial heard on the merits. I would reverse the summary judgment.

Bird, C. J., and Reynoso, J., concurred.

Appellants' petition for a rehearing was denied October 6, 1983, and the judgment is modified to read as printed above.