[No. B027310. Second Dist., Div. Three. June 2, 1988.]

GRAND CENTRAL LIQUORS, INC., Plaintiff and Appellant, v. M. MARK MICHALKO, as Director, etc., et al., Defendants and Respondents.

**COUNSEL**

Barry L. Silver for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Henry G. Ullerich and Christopher C. Foley, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

**DANIELSON, J.**—Grand Central Liquors, Inc., doing business as Ninety-Nine Cents Only Stores and Ralph's Five, Dime and Twenty-Five Cents

Stores (Grand Central) appeals from a judgment adverse to it on its prayer for declaratory relief and denying its prayer for injunctive relief, following a court trial. We affirm the judgment.

## PROCEDURAL STATEMENT

In a first amended complaint filed November 20, 1985, Grand Central alleged that the Director of the California State Lottery (Director), unless enjoined, would unlawfully terminate Grand Central's contract to sell lottery tickets on the ground that Grand Central's policy of selling those tickets at 99 cents ($0.99) violated Government Code[1] section 8880.31, subdivision (b).

In their answer the Director and the California State Lottery Commission (Commission; collectively, defendants) denied the complaint's material allegations and asserted, as an affirmative defense, Grand Central's failure to exhaust administrative remedies.

On June 30, 1986, Grand Central's request for the issuance of a preliminary injunction was denied and a temporary restraining order issued earlier was dissolved. On July 24, 1986, this court denied Grand Central's petition for a writ of supersedeas, inter alia, and on September 15, 1986, dismissed its appeal from the June 30 order. A court trial was held on December 3 and 4, 1986. On March 2, 1987, a statement of decision was filed and a judgment in favor of defendants was filed. Grand Central filed its notice of appeal on April 28, 1987.

## FACTUAL STATEMENT

On or about August 28, 1985, Grand Central and defendants entered into a "Standard Contract" (Contract) whereby Grand Central became a "Lottery Game Retailer" (Retailer) (Contract, § 100). Grand Central agreed to sell instant game lottery tickets (tickets) in accordance with the terms of the Contract (Contract, § 200) and to comply with the provisions of the Lottery Act (§ 8880 et seq.) and the "Rules and Regulations for Lottery Game Retailers for Instant Games" (Rules and Regulations) in existence at the time the contract period began and also "as the Lottery Act or the Rules and Regulations are amended from time to time." (Contract, § 103.) Pursuant to section 401 of the Contract the contract terms and conditions were subject to unilateral amendment by the Director as deemed necessary by the Director. The Retailer's sole remedy if the amendments to the contract were not acceptable to the Retailer was to terminate the contract.

---

[1] All statutory references are to the Government Code unless otherwise indicated.

On October 3, 1985, Grand Central sold tickets at the retail price of $0.99. Also on that date the Director represented to the public that this policy and practice of selling tickets at that price must cease.

On November 15, 1985, the Commission amended the Rules and Regulations to provide that the Contract shall include a term that tickets must not be sold at any price greater than or less than the price stated on the ticket and that the Contract may be suspended, revoked, or its renewal rejected by the Director for any violation of the Contract, the Lottery Act or any rule or regulation adopted by the Commission. The Commission also amended section 200 of the Contract by adding the following two paragraphs: "Lottery Game Retailers shall not sell Lottery tickets at a discount. This prohibition includes selling tickets for cash consideration less than the price established by the Commission and also the giving of free or bonus tickets upon the purchase of other Lottery tickets, such as two tickets for the price of one.

"Lottery Game Retailers may give Lottery tickets away promotionally. This is permissible even though a purchase of products other than a Lottery ticket is required as a condition to receiving the Lottery tickets."

On November 20, 1985, Grand Central filed its first amended complaint.

At the court trial Grand Central took the position that it had been denied equal protection of the law for the reason that the Commission allowed retailers to give away tickets in conjunction with the purchase of merchandise, which it claimed was a form of ticket discounting, but did not allow retailers, such as Grand Central, to discount the price of tickets. The trial court impliedly rejected Grand Central's contentions by awarding judgment to defendants. Judgment was made and entered on March 2, 1987.

## ISSUE PRESENTED

The essential issue raised by this appeal is whether section 8880.31, subdivision (b), and section 200 of the Contract, as amended, and as applied to Grand Central, deprive Grand Central of the equal protection of the law. We hold that it does not.[2]

---

[2] In its reply brief Grand Central raises the additional issue of whether the Contract was terminated in accordance with section 604 of the Contract. Grand Central contends that its right to operate as a Retailer was improperly terminated since nowhere in section 604 of the Contract, which sets forth specific "Reasons for Termination By Director," is any provision

## CONTENTIONS

Grand Central asserts that it has been deprived of equal protection of the laws under both the federal and California Constitutions in that defendants have arbitrarily and capriciously created two classes of lottery ticket retailers, i.e., "Discount Retailers," such as Grand Central, and "Giveaway Retailers," and have impermissibly discriminated against the former while favoring the latter.

## DISCUSSION

### *The Claimed Denial of Equal Protection*

At the heart of Grand Central's position is its argument that the Commission should allow Grand Central to discount its tickets from the $1 established retail price to 99 cents ($0.99) since the Commission allows Retailers to give those tickets away, which Grand Central claims is a form of discounting under section 8880.31, subdivision (b).[3] In other words, the Commission should not be allowed to discriminate between "Discount Retailers," such as Grand Central, and "Giveaway Retailers."

In support Grand Central relies primarily on *Brown v. Merlo* (1973) 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]. In that case our Supreme Court stated: "Article I, sections 11 and 21 of the California Constitution guarantee to every person that '[a]ll laws of a general nature shall have a uniform operation' and that '[no] citizen, or class of citizens, [shall] be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens'; the Fourteenth Amendment of the United States Constitution frames a similar commitment, mandating that no state may 'deny to any person within its jurisdiction the equal protection of the laws.' This principle of 'equal protection' preserved by both state and federal Constitutions, of course, 'does not preclude the state from drawing any distinctions between different groups of individuals' [citation], but it

---

that a Retailer may be terminated for selling tickets at a price below that stated on the ticket. However, we note that this issue was not raised by the pleadings nor was it otherwise raised for determination by the trial court. Grand Central is therefore precluded from raising this issue for the first time on appeal. (See, e.g., *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 221-222, fn. 15 [188 Cal.Rptr. 115, 655 P.2d 317]; cf. *Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 [194 Cal.Rptr. 357, 668 P.2d 664].)

[3] Subdivision (b) of section 8880.31 reads: "The retail price of each ticket or share in any Lottery Game conducted by the Lottery shall be at least one dollar, except to the extent of any discounts authorized by the Commission." The established retail price of the ticket during this relevant time frame was $1. In practice, a retailer paid 95 cents for a ticket and made a 5 cent profit when the ticket was sold to a customer for $1.

does require that, at a minimum, 'persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' [Citations] . . . [¶] As the United States Supreme Court recently phrased the federal constitutional standards: 'The Equal Protection Clause . . . den[ies] to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. . . ." (*Id.* at p. 861.)

We find Grand Central's basic premise to be flawed, i.e., that the Commission impermissibly created two classes of similarly situated retailers, "Discount Retailers" vis-à-vis "Giveaway Retailers," to which it accords different treatment in the sale of lottery tickets. That is simply not the case.

By its contention Grand Central seeks to set up the "straw" classifications of "Discount Retailers" and "Giveaway Retailers" and then to argue that the two classes are "similarly situated" but are not accorded equal protection by the defendants, as is required by the constitutional equal protection clauses. That contention is obviously and fatally flawed.

The Contract, the Rules and Regulations and the Lottery Act, do not create two classes of lottery ticket retailers; they create but one class of Retailer, namely, a "Lottery Game Retailer." And the Contract, together with the Rules and Regulations and the Lottery Act, apply equally to all of the members of that class. None of the members of that class is allowed to sell lottery tickets at a discount, and all of the members of that class are allowed to give lottery tickets away promotionally, as provided by section 200 of the Contract.

A "discount" is "an abatement or reduction made from the gross amount or value of anything." (Webster's Third New Internat. Dict. (1981) p. 646.) When the retail price of a ticket is reduced from $1 to $0.99 by a Retailer, a discounting of the ticket price occurs. In contrast, the ticket price is not discounted when the Retailer gives that ticket away to a customer since the customer was not charged anything for the ticket. Moreover, the fact that a Retailer requires the purchase of a product or products as a condition precedent to receiving a free ticket does not constitute a discounting of the ticket price. The retail price of the ticket remains a constant. Instead, it is the value of the merchandise that is discounted. Any discount would be in the cost of the product or products to the customer, i.e., the cost of the product is reduced by the value of the tickets given to the customer for buying the product.[4] For example, if the Retailer offers a free

---

[4] In testimony, Grand Central's president, Thomas R. Hale, considered the giveaway of a ticket with the purchase of a product to involve an increase in the price of merchandise to

ticket with the purchase of a $50 shirt, then what transpires is the customer really pays only $49 for that shirt since the value of the ticket is $1.

■ Since the principle of equal protection requires that persons similarly situated receive like treatment under the law (*Brown, supra,* at p. 861), the threshold inquiry is whether the persons or classes of persons in question are similarly situated. (See, e.g. *Johnson* v. *Department of Social Services* (1981) 123 Cal.App.3d 878, 883-884 [177 Cal.Rptr. 49].) ■ We find that Grand Central has failed to meet its burden in this regard. Based on our analysis, *ante,* it is manifestly clear that Retailers who give away lottery tickets promotionally, with the purchase of merchandise, are not engaging in a form of lottery ticket price discounting. Those Retailers are therefore not similarly situated to Retailers who discount the price of lottery tickets, such as Grand Central. In other words, this is not a situation where one class of Retailers is allowed to discount the price of a lottery ticket while another class is not. From our review of the applicable Contract, Rules and Regulations, and law it is also abundantly clear that those matters are applicable equally to the entire class of lottery ticket retailers. Accordingly, it is of no legal import that the Commission permits Retailers to give away lottery tickets promotionally, in conjunction with the purchase of merchandise, but prohibits those same Retailers from discounting the face price of the ticket. We conclude from the foregoing that Grand Central was therefore not denied equal protection of the law.

DISPOSITION

The judgment is affirmed.

Klein, P. J., and Croskey, J., concurred.

---

cover the price of the ticket. However, he conceded that it also involved discounting the merchandise by $1 (i.e., retail price of one ticket).