Filed 9/30/19 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| MANCINI & ASSOCIATES,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JASON SCHWETZ,<br><br>  Defendant and Appellant. | 2d Civil No. B290498<br>(Super. Ct. No. 56-2016-00485907-<br>CU-NP-VTA)<br>(Ventura County)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT*:

It is ordered that the opinion filed herein on September 4, 2019, be modified as follows:

1.  On page 1, the third full paragraph is deleted and the following paragraph is inserted in its place:

  Thereafter, without the attorney's knowledge or consent, the client and the defendant prepare a document releasing the defendant from the pending judgment, including attorney fees and costs.

---

* Gilbert, P. J.
  Yegan, J.
  Tangeman, J.

2.  Starting at the bottom of page 4 and ending at the top of page 5, the following three sentences are deleted:

> In ruling, the trial judge commented, "Something about this [factual situation] doesn't seem right.  It's inconsistent.  Sometimes I see this happen, this sort of resolution when there is evidence of a kind of romantic relationship that's been rekindled . . . ."

Appellant's petition for rehearing is denied.
There is no change in the judgment.

Filed 9/4/19 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| MANCINI & ASSOCIATES,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JASON SCHWETZ,<br><br>  Defendant and Appellant. | 2d Civil No. B290498<br>(Super. Ct. No. 56-2016-00485907-<br>CU-NP-VTA)<br>(Ventura County) |

Of course, on occasion, a client may not fully appreciate the excellent result achieved by her or his attorney. Such an occasion provides the background from which this case arises.

An attorney successfully prosecutes an action resulting in a substantial jury verdict in favor of his client. The retainer agreement between the attorney and his client provides that the attorney receive a percentage of the recovery and costs should his client prevail.

Thereafter, the client, without the attorney's knowledge or consent, releases the defendant from the pending judgment, including attorney fees and costs.

Does this release preclude the attorney from pursuing his costs and fees from the defendant? Of course not.

Jason Schwetz appeals a judgment entered in favor of the law firm Mancini & Associates (Mancini).  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

This appeal concerns a written settlement and release from a 2008 judgment awarded Gina Rodriguez, plaintiff in the underlying lawsuit, *Rodriguez v. Schwetz* (Super. Ct. Ventura County, 2008, No. SC046381).  But for $40 collected from defendant Schwetz in a debtor's exam, the judgment proved to be uncollectable.  Seven years following trial and her favorable judgment, Rodriguez regretted the lawsuit and sought "to resolve all the issues" with Schwetz.  The settlement and release broadly releases the attorney fees and costs due Mancini pursuant to the firm's retainer agreement with Rodriguez.

Mancini brought this action against Schwetz seeking attorney fees and costs, plus interest, awarded in the underlying litigation and incorporated into the 2008 judgment.  Following a court trial, Mancini obtained $409,351 damages on tort theories of interference with contract and economic advantage.  Schwetz appeals this award.

*Underlying Lawsuit and Aftermath*

On March 30, 2005, Rodriguez and Mancini agreed in writing that Mancini would represent Rodriguez in an employment lawsuit against her former employer NADT, LLC (NADT), and its principal, Schwetz.  The retainer agreement provided that Mancini's attorney fees would be 50 percent of any recovery obtained plus all attorney fees awarded by the trial court.  In addition, the agreement provided that court costs would be repaid from any recovery and specifically provided for a lien for Mancini's fees and costs.

In 2006, Mancini filed a lawsuit against NADT and Schwetz on behalf of Rodriguez.  The complaint alleged causes of

2

action for wrongful termination, sexual harassment, sexual battery, and breach of contract, among other causes of action. Two years later, the matter proceeded to jury trial on the causes of action of breach of contract and sexual battery. The jury awarded $68,650 damages against Schwetz on the breach of contract claim and no damages against NADT. In 2008, the trial court then awarded $12,622.46 costs and $136,050 attorney fees to Rodriguez, and $5,838.81 costs to NADT.

Following the 2008 judgment, Mancini, on behalf of Rodriguez, sought to collect the damages. Despite the efforts of Mancini's collections attorneys, however, the judgment proved uncollectable. On occasions, however, Schwetz did offer "nuisance value[]" settlements.

In January 2014, Rodriguez contacted Schwetz on Facebook, expressing interest in his well-being and asking if he continued in business. Schwetz responded that he no longer had his tanning salon business and suggested they have lunch. Rodriguez responded that she was "single as usual" and agreed to meet Schwetz for lunch. Following their conversation and lunch, the two resumed their friendship.

In 2015, Mancini employed Michael Berke, a collections attorney, to pursue collection of the judgment. In early April 2015, Berke contacted Schwetz by telephone and also subpoenaed his bank records. In response, on April 5, 2015, Schwetz contacted Rodriguez and asked if she had hired Berke to collect the judgment against him. Rodriguez replied that she did not employ Berke and had no knowledge of him.

Soon, Schwetz and Rodriguez prepared a document entitled "Memorandum of Settlement and Mutual Release" (Memorandum). The Memorandum refers to the underlying lawsuit and judgment and releases the parties, and their agents

3

and attorneys "from all judgments, fees, costs, claims, damages, demands, and causes of action, known or unknown, suspected or unsuspected, arising out of the Action."[1]  Schwetz and Rodriguez executed the document on April 6, 2015, several days after Berke's initial contact with Schwetz.  By FAX, Schwetz immediately provided a copy of the Memorandum to Berke, who then forwarded the document to Mancini.

*Mancini's Lawsuit Against Schwetz*

In 2016, Mancini brought this lawsuit against Schwetz alleging causes of action for intentional interference with contract, intentional interference with economic relations, negligent interference with prospective economic relations, and enforcement of an attorney lien.

At trial, Schwetz testified that he and Rodriguez drafted the Memorandum because Rodriguez wanted to resolve their differences.  He admitted that he knew there were continuing efforts to collect the judgment and intended the Memorandum to resolve all claims, including Mancini's attorney fees, against him.  Schwetz stated that he provided no consideration to Rodriguez for the settlement and release.  He added that the parties executed a settlement agreement sometime in 2014, but that he could not locate the original or a copy.

Following presentation of evidence and argument by the parties, the trial court decided that Mancini established that Schwetz intentionally interfered with the retainer agreement and with Mancini's economic benefit.  The court then entered judgment for $409,351.81.  In ruling, the trial judge commented, "Something about this [factual situation] doesn't seem right.  It's

---

[1] Schwetz later testified that NADT may have been defunct by the time the parties executed the Memorandum.

4

inconsistent.  Sometimes I see this happen, this sort of resolution when there is evidence of a kind of romantic relationship that's been rekindled . . . ."

Schwetz appeals and contends that:  1) Mancini's claims are precluded by the litigation privilege of Civil Code section 47, and 2) insufficient evidence exists that he intentionally interfered with Mancini's contractual relationship with Rodriguez.

*DISCUSSION*

*I.*

Schwetz argues that his settlement communications with Rodriguez were privileged by the litigation privilege of Civil Code section 47.  He acknowledges that the litigation privilege was not litigated in the trial court, but contends that we may decide the issue as one of law on uncontroverted facts.

Generally, issues not raised in the trial court may not be raised for the first time on appeal.  (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417.)  A "forgiving approach" may apply where important issues of public policy exist and the issue is a pure question of law.  (*Ibid.*)  Otherwise, it is unfair to the trial court and to the opposing litigant for a party to raise a new and different theory on appeal.  (*Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847.)

Here Schwetz does not present any singular important public policy issue raised in the context of this litigation that a forgiving approach should resolve.  Nevertheless, giving Schwetz the benefit of the doubt, we shall discuss the merits of his contentions.  (*Sea & Sage Audubon Society, Inc. v. Planning Com., supra*, 34 Cal.3d 412, 417.)

Civil Code section 47, subdivision (b) codifies a privilege that applies to a "publication or broadcast" that is part of a

5

"judicial proceeding."  The primary purpose of this privilege is to "afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions."  (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213.)  The privilege applies when statements are made in judicial or quasi-judicial proceedings by litigants or other participants to achieve the objects of the litigation.  (*Id.* at p. 212.)  The statements must also have some connection or logical relationship to the litigation.  (*Ibid.*)  Judgment enforcement proceedings are an extension of the judicial process.  (*O'Keefe v. Kompa* (2000) 84 Cal.App.4th 130, 134-135 [post-judgment collection efforts related to litigation objective].)  The privilege also applies to statements made during settlement negotiations.  (*Optional Capital, Inc. v. DAS Corp.* (2014) 222 Cal.App.4th 1388, 1404.)

The "threshold issue" in determining the application of the litigation privilege is whether the defendant's conduct was communicative or noncommunicative.  (*LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 345.)  Civil Code section 47, subdivision (b) applies only to communicative acts and does not apply to tortious courses of conduct.  (*LiMandri*, at p. 345.)

Here, although Schwetz's act of executing the Memorandum was communicative, it was but one act in a course of tortious conduct to deprive Mancini of its attorney fees.  Schwetz spoke with collections attorney Berke and learned that the judgment against him was again the subject of collection.  Schwetz then contacted Rodriguez to learn if she had employed Berke.  Rodriguez confirmed that she was not seeking to enforce the judgment, had not employed Berke, and did not know that Berke was seeking to collect the judgment.  Schwetz was present during the underlying trial and admitted that he knew of the

6

judgment against him.  The judgment specifically awarded Rodriguez attorney fees as well as damages and costs.  Schwetz's noncommunicative conduct was not protected by the litigation privilege.  A third party who impairs an attorney's rights pursuant to a contractual lien may be subject to liability for tortious interference with contractual relations or prospective economic advantage.  (*Little v. Amber Hotel Co.* (2011) 202 Cal.App.4th 280, 291.)

*II.*

Schwetz contends that there is insufficient evidence that he knew of Mancini's attorney fee lien or that he intended to interfere with Mancini's collection of its attorney fees and costs.  He relies upon his testimony that he had no knowledge of Mancini's fee retainer agreement with Rodriguez:  "I didn't know what she had or didn't have. . . .  I would have no knowledge of that."

In reviewing the sufficiency of evidence to support a judgment, we view the evidence and draw all reasonable inferences therein in favor of the judgment.  (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1203.)  We do not reweigh the evidence or reassess witness credibility.  (*Id.* at pp. 1203-1204.)  We discard unfavorable evidence as not having sufficient verity to be accepted by the trier of fact.  (*Little v. Amber Hotel Co., supra*, 202 Cal.App.4th 280, 292.)

Sufficient evidence and all reasonable inferences therefrom establish that Schwetz knew that Mancini had a fee agreement with Rodriguez and that he intentionally and wrongfully interfered to avoid paying the attorney fees and costs.  Schwetz was present during trial of the underlying litigation, received the judgment, and knew that the trial court separately awarded

7

$136,050 attorney fees to Rodriguez.  Schwetz also knew that Mancini represented Rodriguez throughout trial.

Post-judgment, Schwetz offered nuisance value settlements from time to time, paid $40 to Mancini's counsel in a debtor's exam, and acknowledged that he knew Berke was attempting to collect the judgment.  Rodriguez informed Schwetz that she did not intend to collect the judgment.  Within several days of Berke's contract, Schwetz executed the Memorandum with Rodriguez releasing the parties' attorneys from all judgments, fees, costs, claims, damages, and demands.  Schwetz provided no consideration for the settlement and release.  He testified that one purpose of the Memorandum was to resolve all the issues, including Rodriguez's attorney fees and claims.

Having found the judgment supported by sufficient evidence of Schwetz's intentional interference with contract, we need not discuss his remaining contentions.

The judgment is affirmed.  Respondent shall recover costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>


GILBERT, P. J.

We concur:



YEGAN, J.



TANGEMAN, J.


8

Kent M. Kellegrew, Judge

Superior Court County of Ventura

_____

Greg May for Defendant and Appellant.

Mancini & Associates and Tara J. Licata for Plaintiff and Respondent.