Filed 5/14/14  Mt. Shasta Tomorrow v. County of Siskiyou CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| MT. SHASTA TOMORROW, | C072035 |
| Plaintiff and Appellant, | (Super. Ct. No. SC SC CV PT 11-0770) |
| v. | |
| COUNTY OF SISKIYOU et al., | |
| Defendants and Respondents. | |

Mt. Shasta Tomorrow (MST) appeals from a judgment of dismissal after the trial court denied its belated motion to waive the costs of certifying an administrative record, after repeated extensions of time in which to pay the costs.  On appeal, MST raises a number of issues generally challenging the County of Siskiyou's legal right to impose these costs, and the denial of its motion for a waiver.

As we will explain, contrary to MST's view that it has been unfairly and deliberately deprived of its day in court, the record shows that MST filed a lawsuit it

1

knew it could not afford to litigate, and then misled the trial court in an apparent effort to delay the case. Accordingly, we shall affirm.

## PROCEDURAL BACKGROUND

MST sued the County of Siskiyou and its Board of Supervisors (County) on June 9, 2011, alleging defects in the adoption of a zoning ordinance increasing various fees, alleging among other things defects in the notice of hearing and lack of compliance with the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.).[1] In particular, MST objected that that new ordinance would unreasonably increase the cost of filing an appeal of Planning Commission decisions from $750 to $1,525, yet the notice of hearing merely spoke of amending fees of the planning department. Further, MST alleged the County improperly bypassed CEQA review.

MST elected to prepare the administrative record itself, "subject to certification of its accuracy by the County." (See § 21167.6, subd. (b).)[2]

_____

[1] Further undesignated statutory references are to the Public Resources Code.

[2] Section 21167.6, subdivision (b) provides:

"(1) The public agency shall prepare and certify the record of proceedings not later than 60 days from the date that the request specified in subdivision (a) was served upon the public agency. Upon certification, the public agency shall lodge a copy of the record of proceedings with the court and shall serve on the parties notice that the record of proceedings has been certified and lodged with the court. *The parties shall pay any reasonable costs or fees imposed for the preparation of the record of proceedings in conformance with any law or rule of court.*

"(2) The plaintiff or petitioner may elect to prepare the record of proceedings or the parties may agree to an alternative method of preparation of the record of proceedings, *subject to certification of its accuracy by the public agency*, within the time limit specified in this subdivision." (Emphases added.)

The County answered on July 15, 2011, noting that no administrative record had yet been lodged and therefore it lacked information needed to reply to the complaint to the extent the complaint sought declaratory or injunctive relief, and because no administrative record had been lodged, no answer to the complaint was required, to the extent the complaint sought a petition for writ of mandate.

On July 22, 2011, MST filed a notice of hearing on the merits.

At the August 23, 2011 hearing, MST's counsel represented that he would file the administrative record by the first week of September, and the County's counsel pointed out it would be subject to County review and certification for accuracy. After the trial court (Kaster, J.) proposed a status conference several months out to give counsel time to work out issues, the County argued MST had to deposit funds to cover the County's costs. With MST's concurrence, the court set a date of October 4, 2011, with briefing on the costs issue due September 27, 2011.

On October 4, 2011, MST filed a motion for a preliminary injunction.

At a hearing on that date, MST's counsel alleged MST could not afford the cost to certify the administrative record, estimated to be $3,000 to $5,000. Counsel for the County disputed this, stating the County asked for a $500 deposit, and pointed out that "until we get the record, nobody really knows with any certainty what it's going to take to certify the record." The County suggested MST be directed to lodge the record, and if a dispute about the reasonableness of the cost to certify it arose, that could by handled by the court. MST urged the court to grant its preliminary injunction and relieve MST of the need to pay to certify the record. In part MST relied on a declaration by MST director, Dale La Forest, stating that in a *prior* lawsuit, the County's original deposit request was much less than the ultimate charge for certifying the record. Nowhere did MST describe the size of MST's membership or its financial resources, except to assert that it relies on donations which were waning, and it "is without the economic means and cannot afford"

3

the thousands of dollars likely to be incurred in this matter for record certification. MST borrowed money to pay $900 for an appeal fee.

MST's counsel represented: "Whether the charges are reasonable or unreasonable, we believe that my client is not going to be able to afford to pay those charges." Counsel provided no legal authority allowing the record preparation and certification charges to be paid by the County. The trial court (Dixon, J.) found that until the size of the record and cost of certifying it were known, cost disputes were premature, ordered MST to prepare the record by the end of October, and set a date to address costs on December 13, 2011, without objection by counsel.

On December 9, 2011, MST filed a request to vacate the hearing date *based on a stipulation of counsel*. The stipulation provided that MST "shall deliver the complete administrative record to the Planning Department" by December 9, 2011, the County shall either certify it or notify MST of any problems by December 30, 2011, and MST shall respond to any such disputes by January 14, 2012, and if the parties are unable to resolve any such disputes by January 28, 2012, a court motion to address them could be filed. Based on the stipulation, the trial court (Masunaga, J.) continued the matter-- including the as-yet unresolved motion for a preliminary injunction--until March 6, 2012. At the hearing, MST's counsel asserted his client had already submitted the administrative record to the County.

On February 15, 2012, the County filed a motion for an order directing MST to deposit costs for certifying the administrative record "or in the alternative, dismiss the case." In its moving papers, the County asserted that although it was entitled to a deposit before reviewing the record, it had "reviewed a draft of the record" and estimated costs of $1,997.86--supported by declarations detailing the staff time necessary to review the record for accuracy and certify it--but MST had not paid anything. The County sought $1,955.54 or, if MST would not pay, dismissal of the case.

4

On February 22, 2012, MST opposed the motion, claiming the costs were unreasonable for preparation of what it claimed was a 600-page record. In part, MST claimed specific items reflected overcharges or unnecessary matters. MST made the unsubstantiated assertion that it had spent "hundreds of hours" assembling the record. MST claimed the County "waived" its right to a deposit because it began working on certifying the record before collecting a deposit. MST repeated its claim that it could not afford the costs, relying on a declaration by Dale La Forest, asserting he was experienced in preparing administrative records and the County's review of the record he prepared was unreasonable, and some of the problems stemmed from the County's own disorganized record system. There was no information about MST's finances in this new declaration. However, MST also submitted a declaration from the director of a different non-profit entity, not a party to this case, claiming it is often difficult to raise the money to appeal planning decisions and pay for administrative records.

Also on February 22, 2012, the County opposed the motion for a preliminary injunction. In part, the opposition noted that MST had not alleged that it had filed or planned to file any appeal subject to the revised fee schedule, and therefore had not shown irreparable harm. Further, because MST claimed to be indigent, the preliminary injunction would require the County to absorb the costs of certifying the record, casting an unfair burden on taxpayers. If the court granted an injunction, a fair undertaking would be the estimated costs of certifying the record ($1,955.54).

On February 28, 2012, the County replied to MST's opposition to the motion that it pay costs, asserting with a supporting declaration that it had reviewed the record presented by MST, and further costs would be limited. The charges so far represented about eight hours of a deputy planning director's time and 30 hours by a senior clerk, which was not unreasonable given MST's claim--though factually unsupported--that it had spent "hundreds" of hours assembling the record. Contrary to MST's assertions, the record was more than 600 pages long, and the County needed to review items which were

5

not possessed by the planning department, to identify omitted required items, and to include clear items where some of MST's tendered documents were illegible in whole or in part. A declaration by the deputy planning director supported these factual claims in detail.

At a hearing on March 6, 2012, counsel for the County explained that the County reviewed MST's proposed record without a deposit, and "provided detailed comments to the petitioners as to what they need to do. We've provided them clean copies of the documents, so that their record is -- can be complete. And we're awaiting their response. [¶] In terms of how much more it will take, well, that will be determined by the petitioner. We have no control over what they're going to send back to the County. . . . If they conform to the instructions, then I think it's reasonable to assume that the next series of charges and costs incurred by the County are going to be dramatically less." In other words, if MST accepted the County's view, little additional cost would be incurred, but until MST responded, the County could not estimate how much more time would needed to review MST's possible further proposals.

In an order after hearing made on March 26, 2012, the trial court (Masunaga, J.) denied the preliminary injunction on the ground MST had not shown a likelihood of prevailing on the merits. The court ordered MST to pay the deposit of $1,955.54 "by close of business on March 30, 2012."

At a hearing on April 3, 2012, counsel for MST admitted the deposit had not been paid, and the County renewed its motion for dismissal. In response, MST's counsel reiterated claims of financial hardship, but presented no *evidence* to support such claims, and again claimed the ultimate cost to certify the record could and likely would rise dramatically above the initial deposit. MST's counsel asked the court to continue the hearing because "if folks could actually sit down and talk about it, we'd probably have it done in half a day." The trial court (Dixon, J.) agreed, giving MST one more chance to make the deposit and complete what was necessary to certify the administrative record.

6

The County's counsel pointed out that MST also had to have the transcripts of the board of supervisors' hearings certified, a separate cost, and the parties were given leave to brief that issue. The court modified the prior order and made the new date for the deposit--"the new line in the sand" as phrased by the trial court--April 24, 2012.

MST opposed having to pay to certify the transcripts, claiming the County's request was belated. The opposition was supported by another declaration by Dale La Forest, claiming he had participated in two prior lawsuits in which the County had not asked for payment of certification of transcripts. He declared he was the treasurer of MST, and stated: "Our current bank budget is less than $100.00. Our income from donations has essentially evaporated now for several years during the current nationwide financial recession. We have no other means to borrow or obtain funds." He did not give details of the organization or state what fund-raising steps it had taken.

In response to the claim of belatedness, counsel for the County submitted a letter dated December 30, 2011, advising MST that "transcripts for the August [board of supervisors] meeting were not submitted for County review. Attached is a relevant excerpt of the County code pertaining to the clerk's charges." Those charges amounted to $305.78, as indicated by an attached schedule.

On April 20, 2012, the parties filed a stipulation to continue the hearing on the motion to dismiss to May 1, 2012, stating "the deposit remains due on April 24, 2012" and MST "is to complete whatever is necessary to finalize the administrative record by Tuesday, May 1, 2012." *MST's counsel signed this stipulation with no written reservations or objections.* The court approved the stipulation.

On May 1, 2012, MST's counsel stated the deposit had not been paid and indicated *there had never been any ability to pay it*, as his client was indigent. Counsel provided no explanation why he had signed the unreserved stipulation to the contrary in the face of such knowledge. The County replied that, absent a record, MST could not prevail in its lawsuit, and therefore the case should be dismissed. The trial court took the

7

matter under submission and set a new hearing date of May 11, later changed to May 18, 2012.

On May 18, 2012--long *after* the stipulation had been filed and breached--MST filed an ex parte motion for a waiver of costs with the court. Included was a purported copy of a letter to the County from MST dated May 7, 2012, seeking a cost waiver *in an unrelated case*, which was denied by the deputy planning director. Dale La Forest submitted another declaration, stating MST lacked the money or credit to pay the costs, had a bank balance of $1.02, and had not had more than $147 in the bank at any time in the past three years. Again, while describing MST as a "non-profit, public benefit association of concerned citizens," there was no statement of how large the membership was, or the composition thereof. MST also sought sanctions *against the County* for delaying certification of the record, and an order compelling the County to certify the record.

The County opposed the request on several grounds. First, MST had failed to exhaust remedies because MST had never sought a cost waiver from the board of supervisors, and had not shown seeking a waiver would have been futile because it had not sought a waiver from the board of supervisors in the prior case. Second, the trial court had already heard and denied MST's arguments about the costs and had ordered MST to pay them. The County also argued MST was in contempt of prior orders to pay the costs, which justified dismissal.

At a hearing on May 22, 2012, the trial court (Dixon, J.) denied the motion for a fee waiver and ordered the case dismissed. MST timely appealed from the ensuing formal judgment of dismissal.

### DISCUSSION

MST argues primarily that the County is attempting to thwart CEQA by imposing financial obstacles to its proper implementation. MST's disjointed briefing lacks support from the record and legal authority. Accordingly, its contentions fail.

8

# I

## *Policy of Trials on the Merits*

In its first argument, MST points out that dismissals are disfavored and a trial on the merits is preferred. The argument relies solely on *Elston v. City of Turlock* (1985) 38 Cal.3d 227, a case involving relief under a prior version of Code of Civil Procedure section 473, making the point that: "Where . . . the trial court denies the motion for relief from default, the strong policy in favor of trial on the merits conflicts with the general rule of deference to the trial court's exercise of discretion. [Citation.] Unless inexcusable neglect is clear, the policy favoring trial on the merits prevails." (*Elston*, *supra*, at p. 235.) However, this case does not involve a motion for relief from default due to mistake or neglect (cf. *Leavitt v. County of Madera* (2004) 123 Cal.App.4th 1502, 1513 (*Leavitt*)), therefore the passage referenced in *Elston* is unpersuasive as applied to the issues in this appeal.

# II

## *Payment of Costs*

In a series of confusing and overlapping arguments, MST asserts it had no duty to pay any costs. We will address these arguments as best we can understand them.

### A. *Prevailing Party*

First, MST appears to confuse the "costs" awarded to a prevailing party at the end of CEQA litigation with record preparation "costs" required to prepare and certify a record so that a CEQA challenge can be evaluated by a trial court.

By statute, the parties to a CEQA case must pay for preparation and certification of the administrative record, not the relevant agency whose decision is being challenged. (§ 21167.6, subd. (b), quoted in fn. 2, *ante*; see Remy et al., Guide to the Cal. Environmental Quality Act (CEQA) (11th ed. 2006) Judicial Review, at pp. 857-858.)

A challenger may prepare the record itself, subject to certification of accuracy by the agency. (§ 21167.6, subd. (b)(2).) The party preparing the record must "strive" to do

so "at reasonable cost." (§ 21167.6, subd. (f); see *California Oak Foundation v. Regents of University of California* (2010) 188 Cal.App.4th 227, 292 (*California Oak*).)

A leading practice guide states: "Preparation by the petitioner may . . . expedite the process because public agencies are often understaffed and may be unable to prepare the record promptly. *When the petitioner prepares the record, the agency should review it independently before certifying it to ensure that it is both complete and presentable*." (2 Kostka & Zische, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 2d ed. 2013) § 23.71, p. 1213 (rev. 3/13), emphasis added (2 Kostka & Zische).) This review costs staff time and therefore money to the agency. That money must be paid by the petitioner, not the agency.

One of MST's points is that the County's fee ordinance (which we discuss *post*) authorizing the deposit requested in this case conflicts with the prevailing party rule. The two have nothing to do with each other. One addresses the deposit of the probable costs of record preparation and certification *before trial*. *After trial*, the reasonableness of the costs to the prevailing party may be ascertained through the normal method of a motion to tax costs. (See *Hayward Area Planning Assn. v. City of Hayward* (2005) 128 Cal.App.4th 176, 185 ["costs of record preparation did not come under scrutiny until the end of the trial court proceedings"]; *Citizens for Quality Growth v. City of Mt. Shasta* (1988) 198 Cal.App.3d 433, 447-448.)

B. *Scope of the County Ordinance*

MST contends the County ordinance does not permit the County to charge for merely *certifying* a record, only for *preparing* one. We disagree.

County Ordinance 11-04--in addition to raising the appeal fees complained of herein--also includes the following: "10-6.1601(z) Miscellaneous Administrative Costs (Preparation of the Administrative Record, Certification of Transcripts, Creation of Electronic Files, etc.)" for which the fee is "Actual Costs (Staff and Materials) With a 100% Deposit of Estimate." A footnote states: "For miscellaneous administrative costs

10

not otherwise specified and/or controlled by statute, the cost shall be set at actual costs including staff and materials."

We reject MST's interpretation of this ordinance as precluding the County from recouping the costs of certifying a record prepared by a party. Although the schedule does not refer to certification as such, certification is a necessary step in preparation of the administrative record. It is properly embraced by the ordinance, which refers to preparation of the record, and also includes a catch-all provision for "costs not otherwise specified," both of which equal *actual* staff costs.

C. *Reasonableness of Deposit Request*

MST contends the trial court failed to determine the reasonableness of the costs. Because of MST's references to a cost bill, it appears this is another example of the confusion MST displays regarding the difference between pre-trial "costs" to prepare and certify a record and post-trial "costs" to the prevailing party.

MST also contends it had no duty to pay the County until the trial court found that the County was not overcharging. The County presented declarations setting forth the hours of staff time required to certify the record. MST's declarations vaguely asserted these costs were unreasonable, and referred to records in *other* cases, but at best for MST, that would create a conflict in the evidence, resolved against MST by the multiple orders requiring MST to pay the costs. "A factual contest based on written evidence is treated like other factual contests." (*California Correctional Supervisors Organization, Inc. v. Department of Corrections* (2002) 96 Cal.App.4th 824, 832.) MST has not carried its burden, as the appellant, to demonstrate error.

Until a record is certified, it is not deemed accurate. By statute, where a petitioner prepares a record, the agency must review it for accuracy and then certify that it is accurate. (§ 21167.6, subd. (b)(2).) MST could have chosen to allow the County to both prepare and certify the record, but exercised its statutory right to prepare the record itself. But the County retained the vital role to review the record and insure it did not include

11

improper material or exclude proper material, and "certify" or attest that it was accurate, thereby assuring the trial court that the record on which she or he would assess MST's substantive CEQA challenges was complete. (See 2 Kostka & Zischke, *supra*, § 23.71, p. 1212 ["preparation of the record by the petitioner is subject to certification of its accuracy by the agency]; *id.* at p. 1213 ["the lead agency remains responsible for ensuring that the record is complete, properly organized, adequately indexed and presented in a way that will allow the proceedings to be followed and understood by a reviewing court"].) Such actions, necessary to certification, are part of the "costs" that the agency may recover. (*Id.* at p. 1214 ["Allowable costs include . . . expenses for reviewing, organizing, and indexing the record"].) As we explained earlier, "The prevailing party is ordinarily able to recover any costs it incurred in preparing the record." (*Id.* at p. 1214.) Disputes about such *post-judgment* costs are resolved by a cost bill and motion to tax, they do not allow a party to refuse to pay costs allocated to them in the first instance.

"Whether a particular cost to prepare an administrative record was necessary and reasonable is an issue for the sound discretion of the trial court. [Citations.] Discretion is abused only when, in its exercise, the court 'exceeds the bounds of reason, all of the circumstances being considered.' [Citation.] The appellant has the burden of establishing an abuse of discretion." (*River Valley Preservation Project v. Metropolitan Transit Development Bd.* (1995) 37 Cal.App.4th 154, 181.) "[A] commonsense reading of section 21167.6, subdivision (b)(1) requires time spent to prepare the record be included. An interpretation such as that urged by RVPP allowing reimbursement for only photocopying and transcription costs would defeat the purpose of the statute by shifting the financial burden to the public agency preparing the record." (*Id.* at p. 182.)

The trial court is the initial arbiter of what costs are "reasonable" in light of the circumstances of the particular case, and the challenger must establish the trial court abused its discretion. (*California Oak*, *supra*, 188 Cal.App.4th at pp. 293-294.) The fact

12

that an agency's estimated costs ultimately prove too low does not of itself establish that the actual costs were unreasonable. (*Id.* at p. 295; see generally *River Valley*, *supra*, 37 Cal.App.4th at p. 179-182) [costs of $2.55 per page reasonable on those facts]; *St. Vincent's School for Boys, Catholic Charities CYO v. City of San Rafael* (2008) 161 Cal.App.4th 989, 1017-1019 [petitioner prepared record, but held liable for extraordinary costs incurred by the agency in connection with record preparation, as a matter within the trial court's discretion].)

We find no abuse of discretion in the trial court's implicit determination that the deposit requested was reasonable.[3]

## III

### *CEQA*

In two separate arguments, MST contends the County violated CEQA by requiring payment of costs, because this deters public participation in the environmental review process. The sole authority MST provides is a dissenting opinion. (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 428, dis. opn. of Mosk, J. (*Sea & Sage*).) The *majority* opinion held that it was *not* improper as a matter of law to require local governments to impose an appeal fee on the entity challenging land-use decisions in that case. (*Id.* at pp. 419-422.) We are not free to adopt the view of the dissenting opinion relied on by MST. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Moreover, as the County points out, the dissent in *Sea & Sage* was concerned because the local ordinance set a *fixed* fee for appeals. (*Sea & Sage*, *supra*, 34 Cal.3d at pp. 425-427, dis. opn. of Mosk, J.) In contrast, here MST was required to pay only the

_____

[3] As we noted earlier, MST at one point *stipulated* it would pay the deposit it later refused to pay and now argues was unreasonable. We disapprove of this cavalier approach to this practice of entering into stipulations without intending to comply therewith.

13

*actual costs* to the County to review the record MST prepared and certify that it was complete and accurate.

The Legislature has determined that the challenger must pay to have the record prepared and certified. In *Black Historical Society v. City of San Diego* (2005) 134 Cal.App.4th 670 (*Black*), a CEQA petitioner refused to pay the costs of preparing the record "despite statutory law and a court order to the contrary," leading the trial court to dismiss the action. (*Id*. at pp. 672.) The *Black* court made two pertinent observations:

> "First, statutory law generally requires a petitioner for a writ of mandate to bear the costs of preparing the record. (See Code Civ. Proc., §§ 1094.5, subd. (a), 1094.6, subd. (c); Pub. Resources Code, § 21167.6, subd. (b)(1).) This court has observed 'taxpayers . . . should not have to bear the cost of preparing the administrative record in a lawsuit brought by a private individual or entity.' [Citation.]

> "Second, in this case, the court made an explicit order . . . requiring the Society to bear the costs of preparing the administrative record. Nothing in this order suggested the City was required to release the record without prior payment." (*Black*, *supra*, 134 Cal.App.4th at pp. 677-678.)

There were other defects in the *Black* proceedings, but these two are most relevant to this case. MST chose to prepare the record itself, unlike the petitioner in *Black*, but refused to pay the cost of certifying the record, and violated court orders to pay the costs, and did not bother to seek a waiver of costs until after repeatedly violating those orders.

To the extent MST believes CEQA challengers should not have to pay for the costs of preparing administrative records, MST "raises a public policy claim, 'properly resolved on the other side of Tenth Street, in the halls of the Legislature.' " (*Grossmont Union High School Dist. v. State Dept. of Education* (2008) 169 Cal.App.4th 869, 892.)

IV

*Denial of Fee Waiver*

MST contends the trial court "erred as a matter of law" by denying its request for a cost waiver, and therefore we should review the issue de novo.

14

We disagree that de novo review is appropriate. Accepting for the sake of argument only that a cost waiver was legally permissible for CEQA record preparation, whether MST was indigent was a factual question.

Although MST repeatedly *claimed* to be indigent, statements in its pleadings to that effect were not *evidence*. (See *Estate of Nicholas* (1986) 177 Cal.App.3d 1071, 1090.) Although MST's declarations described how much money MST had in the bank, they were strangely silent as to the composition of MST and what steps MST had taken or could take to increase its funding. The trial court was not required to believe any of those declarations. "Provided the trier of the facts does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted." (*Hicks v. Reis* (1943) 21 Cal.2d 654, 659-660.)

Further, as we have already described at length *ante*, MST repeatedly violated court orders to pay costs before seeking a waiver. Despite its prior assurances to the court that led to extensions of time, on May 1, 2012, counsel for MST conceded MST was never going to pay the costs. It was not until May 18, 2012, the continued date of the hearing on the motion to dismiss, that MST filed a request for waiver of certification costs.

Based on this record, "the court could reasonably conclude [MST] had no good faith intention" (*Black*, *supra*, 134 Cal.App.4th at p. 678) to pay the costs of certifying the record, but was merely delaying the inevitable. The belated nature of the request for a waiver amply justified the denial of the waiver, assuming waiver was legally permissible.

Because MST insisted it would not pay the costs of certifying the administrative record, in defiance of repeated court orders, and its CEQA challenges hinged on showing some error based on the administrative proceedings, dismissal was the only feasible sanction. (Cf. *Leavitt*, *supra*, 123 Cal.App.4th at pp. 1524-1527 [trial court had inherent

15

authority to dismiss CEQA action when petitioners failed to provide complete record, but abused its discretion because it never gave notice of exactly how they had failed].)[4]

## DISPOSITION

The judgment is affirmed. MST shall pay the County's costs of this appeal. (Cal. Rules of Court, rule 8.278.)


       DUARTE       , J.


We concur:


      HULL       , Acting P. J.


      HOCH       , J.

---

[4] We previously granted part of MST's request for judicial notice, consisting of Siskiyou July 8, 1997, ordinance No. 97-21, and notice of exemption for the zoning ordinance amendment. The County objected to our consideration of these documents. Because we now find them irrelevant to our disposition of the appeal, we disregard them.